**DRAVO CORPORATION, Plaintiff,**

v.

**Morton ZUBER, Zuber Company, and Burlington Northern Railroad Company, Defendants.**

**No. 8:CV 91–00499.**

United States District Court, D. Nebraska.

Sept. 9, 1992.

Michael Mostek and Paul Elofson, McGill, Parsonage Law Firm, Omaha, Neb., Lawrence Demase and Joseph Klein, Reed, Smith Law Firm, Pittsburgh, Pa., for plaintiff.

Robert M. Zuber, Zuber, Ginsburg Law Firm, Omaha, Neb., for defendants Morton Zuber and Zuber Co.

Judy M. Lange and Rodney M. Confer, Knudsen, Berkheimer Law Firm, Lincoln, Neb., Susan M. Greisgraber and John C. Knoeffler, Robins, Kaplan Law Firm, Minneapolis, Minn., for defendant Burlington Northern.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on defendants Zuber and Burlington Northern Railroad Company's motions for summary judgment (filings 90 and 97). Although confronted with a small mountain of paper, I conclude that the defendants' motions should be granted. The straightforward legal issue, uncomplicated by disputed material facts, is whether the so-called "de minimis" settlement agreement—entered into by and between defendants and the Environmental Protection Agency (EPA)—precludes plaintiff from maintaining this suit. Finding that sections 113(f)(2), 42 U.S.C. § 9613(f)(2), and 122(g)(5), 42 U.S.C. § 9622(g)(5), of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) bar plaintiff's claims for monetary relief and declaratory relief, the motions for summary judgement will be granted.

## I.

### A.

Dravo Corporation (Dravo) sued Morton Zuber, Zuber Company (collectively referred to as Zuber) and Burlington Northern Railroad Company (BN) on September 6, 1991. In the complaint Dravo sought to "recover costs expended and to be expended for the study and remedy of a release or threatened release of hazardous substances ... into the environment ... including the Colorado Avenue Subsite, of the Hastings Ground Water Contamination Site in Hastings, Nebraska." (Complaint, ¶ 1 (filing 1)). Dravo claimed that it had been ordered by the EPA to "perform remedial design" work at the Colorado Avenue Subsite (id., at ¶ 31), but the defendants "have made no contribution to funding the expenses" (id., at ¶ 32) despite the fact the Zuber and BN "are liable or potentially liable persons." (Id., at ¶ 38). Therefore, Dravo seeks: contribution and/or indemnity under CERCLA in Count I; common law contribution under Count II asserted as an alternative to count I in the event complete relief could not be solely based upon Count I; equitable subrogation under Count III asserted as an alternative to Counts I and II in the event complete relief could not be solely based upon Counts I and II; and declaratory relief under Count IV.

### B.

After an investigation, the EPA concluded that Dravo (and others excluding the defendants) "arranged for the disposal of [certain chemicals] into a drain that led either to [a] sanitary sewer or [a] storm sewer." (Unilateral Administrative Order, ¶ 14 (September 28, 1990) (filing 98, Exhibit C)). The drain was connected to a private storm sewer which ran under property owned by BN and adjacent to property owned by Zuber (Id., at ¶ 5; Administrative Order on Consent (De Minimis Order), ¶¶ 8, 12, 14 and 17 (filing 98, exhibit A; approved June 12, 1992, filing 98, Exhibit B)). The EPA found that the sewer was broken and the chemicals passing through the sewer leaked into the soil and groundwater causing the contamination (Administrative Order on Consent (De Minimis Order), ¶¶ 16, 17 (filing 98, exhibit A)). Ultimately the EPA concluded that the contamination was "caused solely by the acts and omissions of third parties, including but not limited to ... Dravo [but excluding BN and Zuber]." (De Minimis Order, ¶ 17 (filing 98, exhibit A)).

Zuber and BN, as owners or users of property within the contaminated subsite, technically fall within one of the classes of "responsible parties" under CERCLA. § 107(a), 42 U.S.C. § 9607(a). Apparently as a consequence of this liability exposure, Zuber and BN sought to resolve their liability. See CERCLA § 122(g), 42 U.S.C. § 9622(g) (regarding "De Minimis settlements"). After receiving public comments, including Dravo's opposition to any settlement between EPA, Zuber and BN (Responsiveness Summary) (filing 98, Exhibit D), the EPA settled with Zuber and BN effective June 12, 1992 (De Minimis Order, (filing 98, exhibit A; approved June 12, 1992, filing 98, Exhibit B)).

Among other things, Zuber and BN gave the EPA (and others) access to their prop-

erty for purposes of performing "response actions." (De Minimis Order, (filing 98, exhibit A, ¶ 27)). Subject to certain reservations, the EPA agreed not to sue Zuber and BN. (De Minimis Order, (filing 98, exhibit A, ¶¶ 40 and 41)). The EPA also agreed that Zuber and BN were entitled to "contribution protection" pursuant to section 122(g)(5) of CERCLA, 42 U.S.C. § 9622(g)(5). (De Minimis Order, (filing 98, exhibit A, ¶ 47)). As previously noted, the EPA found that Dravo (and others), but not Zuber and BN, were the parties primarily responsible for the contamination. (De Minimis Order, ¶ 17 (filing 98, exhibit A)).

## II.

### A.

■ Summary judgment should be granted "only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is an extreme and treacherous device, which should not be granted unless the moving party has established a right to a judgment with such clarity as to leave no room for controversy, and unless the other party is not entitled to recover under any discernible circumstance. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir.1980). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Id.* Even if the district court is convinced that the moving party is entitled to judgment, the exercise of sound judicial discretion may dictate that the motion should be denied, in order that the case can be fully developed at trial. *McLain v. Meier*, 612 F.2d 349, 356 (8th Cir.1979).

■ Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury [or other fact finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). And, although under Federal Rule of Civil Procedure 56 due deference must be given to the rights of litigants to have their claims adjudicated by the appropriate finder of fact, equal deference must be given under Rule 56 to the rights of those defending against such claims to have a just, speedy and inexpensive determination of the action where the claims have no factual basis. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

### B.

In my judgment the dispositive *material* fact question is whether Zuber and BN entered into the settlement agreement with EPA. It is undisputed that the settlement agreement was entered into and is now effective. The terms of the settlement agreement are clear. I, therefore, must determine the legal significance of this undisputed fact.

## III.

### A.

CERCLA, at section 122(g)(5), provides that: "A party who has resolved its liability to the United States [pursuant to a De Minimis settlement] shall not be liable for claims of contribution regarding matters addressed in the settlement." 42 U.S.C. § 9622(g)(5).[1] See also section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2) ("A person who has resolved its liability to the United States ... in an administrative ... approved settlement shall not be liable for claims for contribution....")

■ The courts have consistently enforced CERCLA by providing settling parties with immunity from *any claim* regarding matters addressed in the settlement with the government provided the non-settling party's claim is in substance a claim for contribution, even though the claim may be called something else. See e.g.

---

1. The settlement will, however, pursuant to this section, reduce the "potential liability of the others by the amount of the settlement." 42 U.S.C. § 9622(g)(5).

*United States v. Cannons Engineering Corp,* 899 F.2d 79, 92 (1st Cir.1990) (upholding the dismissal of certain cross-claims for such things as indemnity, stating that "[a]lthough CERCLA is silent regarding indemnification, we refuse to read into the statute a right to indemnification that would eviscerate § 9613(f)(2) and allow non-settlors to make an end run around the statutory scheme"); *United States v. Pretty Products, Inc.,* 780 F.Supp. 1488, 1492–1496 & nn. 3 and 7 (S.D.Ohio 1991) (dismissing contribution claims under CERCLA, and claims under Ohio state law and common law, labelled as indemnity, breach of contract, quasi-contract, quantum meruit, and unjust enrichment theories of recovery); *United States v. Alexander,* 771 F.Supp. 830, 840, 841 (S.D.Tex.1991) (calling an assertion that " 'a non-settling defendant may pursue contribution under state law for liability for response costs, notwithstanding the contribution bar provisions of CERCLA' " a "blunt misstatement of the law" and imposing Rule 11 sanctions for such an assertion.) Thus, counts I, II, III, and IV [2] of Dravo's complaint are barred by CERCLA.

### B.

■ Dravo tries to avoid the plain language of CERCLA, and the evident intention of Congress, by asserting various arguments. I have carefully considered each argument and consider them all inventive, but not meritorious. I shall only discuss the more significant of Dravo's arguments.

---

**2.** Count IV seeks declaratory relief. One cannot declare the rights of the parties without reference to the applicable substantive law and the applicable substantive law requires dismissal. Thus the declaratory relief count must be dismissed as well.

**3.** While I stayed discovery in this case, there was nothing to prohibit Dravo from asking the EPA whether Zuber or BN were in compliance with the order if Dravo had a serious concern that there had been a default. Accompanying Dravo's response to Zuber and BN's reply is a "fax copy" of Peter J. Barth's affidavit which alleges that "Zuber Company had, despite the direction from EPA, failed by September 4, 1992 to remove the materials" as required by the Administrative Order on Consent (Barth Affida-

### 1.

Dravo argues that the verb tense or sentence structure of a significant portion of the De Minimis Order suggests that Zuber and BN have not yet been given contribution protection. Dravo points out that the De Minimis Order regarding contribution protection states that the "EPA agrees that by entering into and carrying out the terms of this Consent Order, Respondents *will have resolved* their liability ... and *shall have satisfied* their liability...." (De Minimis Order, (filing 98, exhibit A, ¶ 47) (emphasis added)). Thus Dravo claims that the contribution protection was not effective upon entry and approval of the order, but rather is effective sometime in the future. I disagree.

A common sense reading of the De Minimis Order indicates that it was intended to be effective upon entry and approval. To the extent the order addresses the future, it is plain to me it does so only because BN and Zuber had continuing obligations to the EPA in the future (such as to provide continuing access to land) and, to this extent, the contribution bar was contingent upon the continued compliance by BN and Zuber of the terms of the order. Absent a showing that BN and Zuber are not now in compliance with the order, and there is none, there is no factual basis upon which one can conclude that Zuber and BN, after approval of the order in June of 1992, subsequently did or failed to do something which would have caused a default terminating the contribution bar.[3]

---

vit, ¶ 5). This is insufficient, however, to provide a basis upon which one can conclude that Zuber and BN have failed to do something to cause default terminating the contribution bar. In the first instance, there is no affidavit from the EPA which supports Dravo's contention that Zuber or BN are in default. Secondly, the letter from the EPA to Zuber informing Zuber of the necessary work to be performed pursuant to the Order on Consent, which is attached to the Barth Affidavit as exhibit A, does not designate a date certain by which any work by Zuber needed to be completed (Id. at exhibit A). Therefore, the statement in Barth's affidavit that the work had not been completed by September 4, 1992, does not give rise to a basis to conclude that Zuber is in any way in default.

Dravo's interpretation of the order does not make practical sense because it takes away from the settling parties perhaps the most significant reason to settle—an effective contribution bar. It makes no sense to interpret the order in such a manner.

In cases involving the clean-up of a waste site, it should be no surprise that remediation efforts may take time. Thus it is perfectly understandable for the EPA to make the benefits of any such order contingent upon future performance by the settling parties.

If Dravo's interpretation of the words of the order was adopted, few parties would settle because they could expect no contribution bar until remediation efforts were complete. By the time remediation efforts are complete it is quite possible that the contribution bar would be meaningless—as where contribution was previously ordered and satisfied, or the bar's effectiveness significantly diluted—as where a party is forced to defend an expensive suit for contribution. In fact the EPA has recognized the point in this very case upon being informed of Dravo's suit: "Indeed, the very purpose of a landowner de minimis settlement is to give a party who has a viable defense legal repose and enable that party to avoid litigation costs." (Responsiveness Summary, at 9 (filing 98, Exhibit D)). The EPA made this statement before the order became effective in June of 1992. It is inconceivable that the EPA would have made such a statement, and then approved an agreement that would have deprived Zuber and BN of the obvious benefit of the bargain.

### 2.

Dravo argues that it should be permitted to engage in discovery to determine the factual accuracy of certain statements that Zuber and BN made to the EPA, and it further argues that I erred in staying discovery in this case pending resolution of the motions for summary judgment. Dravo is particularly concerned with the defendants representations to the EPA that they have not "conducted or permitted the generation, transportation, storage, treatment, or disposal" of toxic products on their land. (De Minimis Order, (filing 98, exhibit A, ¶¶ 11 and 13)). Dravo argues that if these assertions are false, then by the express terms of the order the protections of the order no longer exist. (Id. at ¶ 43). Dravo further argues that CERCLA generally allows suits for contribution, and that CERCLA provides that such actions are governed by the Federal Rules of Civil Procedure. CERCLA, § 113(f)(1), 42 U.S.C. § 9613(f)(1).[4] Dravo concludes that I erred in staying discovery in this case, and that Dravo has been unable to develop facts as a result of the stay to challenge the representations made by defendants to the EPA.

In many circumstances a court must permit a party to engage in discovery prior to resolving a motion for summary judgment which is asserted against that party. But that is not the case here because to permit such discovery would be to "allow non-settlors to make an end run around the statutory scheme." *Cannons Engineering Corp*, 899 F.2d at 92. Obviously if Dravo were permitted to engage in discovery to challenge a factual basis for the settlement, the contribution bar would have little value to the settling parties.

Moreover, the de minimis settlement procedure provides for measures to assure that factual accuracy of assertions made to the EPA prior to the settlement being effective. For example, Dravo was given, and took advantage of, the opportunity to submit comments to the EPA about the factual accuracy of the representations made by Zuber and BN to the EPA. In fact, on two separate occasions the EPA gave the public in general, and Dravo in particular, an opportunity to comment.

---

4. This argument is not persuasive. CERCLA *generally* permits contribution actions as Dravo points out. But the general authority to seek contribution found in section 113(f)(1), 42 U.S.C. § 9613(f)(1), must be read together with the specific contribution bar resulting from a de minimis settlement found at section 122(g)(5), which provides that: "A party who has resolved its liability to the United States [pursuant to a De Minimis settlement] shall not be liable for claims of contribution regarding matters addressed in the settlement". 42 U.S.C. § 9622(g)(5).

(Responsiveness Summary (filing 98, Exhibit D)). For example, Dravo challenged the "bald claims" of Zuber. (Id., at 10). The EPA responded that it obtained information from Zuber which if untrue subjected Zuber to criminal prosecution (Id., at 11). The EPA further emphasized that it had conducted an independent investigation of the facts, which included an on site investigation, interviews with Zuber employees, interviews with former Dravo employees, and the collection of other forms of data. (Id.).

Setting aside the question of whether this court would have jurisdiction to review the EPA's decision to settle (a question I do not reach), it appears at this point that the EPA's decision to settle was *not:* (a) predicated solely on the representations made by Zuber and BN; (b) made without considering the position of Dravo; or, (c) arrived at in a haphazard fashion. Consequently, there is no equitable basis to allow discovery in this case.

Dravo cites a portion of *Alexander*, 771 F.Supp. at 834–35 in support of its argument that it ought to be allowed to engage in discovery. Although the *Alexander* court ruled that pursuant to a de minimis settlement CERCLA barred various state claims for contribution, id. at 841, the court did permit a cross-claim to proceed against one of the settling parties because "it now appears possible that the [party] was more involved in the activities leading to this case than was originally believed". Id. at 834. But I am not persuaded that *Alexander* stands for the proposition urged by Dravo, and if it does, I believe *Alexander* was wrongly decided.

*Alexander* allowed a party who had been named in a pending lawsuit, but who had settled pursuant to a judicially approved settlement order, to be brought back into the lawsuit which had been initiated by the EPA, upon a showing that the party was a "principal player". It is one thing for a court which has approved a consent order,

and which has continuing jurisdiction over the settling party and the EPA, to allow a challenge to the consent decree upon the development of new information. It is quite another thing to allow a non-settling party to bring a lawsuit for contribution in effect challenging the EPA's administrative settlement, where the EPA is not a party, and permit that party to engage in discovery about the adequacy of the EPA's determination. In the first instance, the rational for the settlement is squarely before the court since the settlement was judicially approved and the EPA is a party. In the second instance, the rational for the settlement is not squarely before the court since the court did not approve the settlement and the EPA is not a party.

More to the point, if *Alexander* truly stands for the proposition urged by Dravo then I believe *Alexander* was wrongly decided. If a non settling party can obtain discovery—in a contribution suit where the EPA is not a party—to determine whether an administrative de minimis settlement order is factually well founded, then the contribution bar enacted by CERCLA has virtually no utility. I refuse to read CERCLA in a way that frustrates the evident intent of Congress.

**3.**

 Dravo argues that its suit involves both a claim for contribution costs, and "independent response costs". Evidently Dravo argues that costs it incurred for its own response measures are different than costs it has incurred in response to actions of the EPA. Therefore Dravo argues that it can sue for costs it decided to incur independent of any costs Dravo incurred as a result of EPA actions.[5] This argument is based upon the lone case of *United States v. Hardage*, 19 Chem. Waste Lit.Rep. 133 (W.D.Okla.1989). In *Hardage* the court held that the United States had no authority under CERCLA to protect de minimis parties from "independent response cost

---

5. A fair reading of the complaint strongly suggests that all costs were incurred directly or indirectly as a result of the EPA's actions (filing 1, Complaint, e.g. ¶ 29), and not as an independent response. Indeed the affidavit of James J.

Puhala, general counsel of Dravo, makes clear that only after Dravo was notified that it was a potentially responsible party did Dravo begin to incur response costs (filing 88, Affidavit, ¶ 4).

claims", with the court stating that such a holding would encourage parties to engage in clean up activities on their own.

I am not inclined to follow *Hardage,* assuming, without deciding, that it is applicable on the facts of this case. Even if Dravo incurred "independent response costs", Dravo's costs so expended reduced its liability to the United States to the extent of the remedial utility of the response.[6] It is undisputed that the EPA concluded the contamination was "caused solely by the acts and omissions of third parties, including but not limited to ... Dravo [but excluding BN and Zuber]" (De Minimis Order, ¶ 17 (filing 98, exhibit A)). Thus, because the response costs, no matter when or why they were incurred, will reduce Dravo's liability to the United States (assuming for Dravo's sake that the responses had remedial utility), a "response cost claim" is indistinguishable from a claim for contribution.

Both a "response cost claim" and a "contribution claim" seek to force a party settling with the EPA to share in the cost of remediating a contaminated site to a degree different than required by the EPA on the theory that the settling party has received some benefit from the actions of a non-settling party who is also liable to the government. As noted previously, the words of the contribution bar of CERCLA were intended to foreclose such claims no matter what they are called. Thus whether the *Hardage* policy goal of encouraging private parties to begin clean up on their own is a good policy, the goal is irrelevant for Congress has spoken. *Cannons,* 899 F.2d at 92 ("This clear and unequivocal statutory mandate overrides appellants' quixotic imprecation that their liability should be reduced not by the amount of settlement but by the equitable shares of the settling parties. In a very real sense, the appellants' arguments are with Congress....").

Still further, if the *Hardage* rational were adopted it would inject into the de minimis settlement process a significant degree of uncertainty about the exposure of the settling party to non-settling parties, particularly to those non-settling parties who are primarily responsible for the contamination. This in turn would provide a disincentive to settlement with the government, a result clearly contrary to CERCLA. Among other things, prior to a settlement, a settling party would have to make a determination, if it desired to make an informed decision about its exposure to a non-settling party, whether: (a) any non-settling party had expended costs in remediation, and (b) if so, whether the costs were "independent" of the actions of the government or as a result of government actions.

It is doubtful that a settling party could ever obtain sufficient information on these questions to make an informed risk assessment decision. It is therefore also doubtful that a settling party would have an incentive to settle with the government, when the contribution bar could turn out to be wholly illusory. Since one of the express statutory goals of the de minimis settlement procedure is to "promptly as possible reach a final settlement with a potentially responsible party ... if such settlement involves only a minor portion of the response costs", CERCLA, § 122(g)(1), 42 U.S.C. § 9622(g)(1), the *Hardage* rational frustrates, rather than furthers, the Congressional intent.

Accordingly,

IT IS ORDERED in regard to the defendants' motions for summary judgment (filings 90 and 97) that:

1. the motions are granted, except as noted below,

2. the motions are denied to the extent the motions seek sanctions, and

3. this case is hereby dismissed.

---

6. To the extent that the response had no remedial utility and thus did not reduce the liability of Dravo to the government, Dravo would have no basis to require defendants to share in the expenditure of useless costs.