**DRAVO CORPORATION, Appellant,**

v.

**Morton ZUBER, Zuber Company, and Burlington Northern Railroad Company, Appellees.**

**No. 92–3858.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1993.

Decided Jan. 12, 1994.

---

Joseph Klein, Pittsburgh, PA, argued (Lawrence Demase and Pamina Ewing, Pittsburgh, PA, Paul Elofson and Michael Mostek, Omaha, NE, on the brief), for appellant.

Susan Griesgraber, Minneapolis, MN, argued, for appellee Burlington Northern R. Co. Howard Kenison, Denver, CO, argued, for appellee Zuber (John P. Jones, Denver, CO, on the brief).

Before RICHARD S. ARNOLD, Chief Judge, and McMILLIAN and HANSEN, Circuit Judges.

HANSEN, *Circuit Judge*.

Dravo Corporation filed suit seeking contribution in the form of declaratory relief and damages from Morton Zuber, the Zuber Company, and the Burlington Northern Railroad Company (the defendants) after Dravo became liable to the Environmental Protection Agency (EPA) for the costs of cleaning up soil and groundwater contamination. The district court [1] granted summary judgment to the defendants, concluding that Dravo's contribution claims were barred by a provision of a settlement agreement between the defendants and the EPA. Dravo appeals, and we affirm.

## I.

From 1968 to 1982, Dravo operated a manufacturing plant at 108 South Colorado Avenue, Hastings, Nebraska. Dravo used liquid solutions containing trichloroethylene (TCE), 1,1,1–trichloroethane (TCA), and tetrachoroethene (PCE) in a part of its manufacturing process known as "vapor degreasing." Dravo disposed of these solutions through a floor drain on its property. The floor drain led to a sanitary sewer that ran in a northerly direction or to a storm sewer that ran in an easterly direction. The sewer lines apparently leaked, and the chemicals seeped into the surrounding soil. In 1983, Dravo sold the property on which its manufacturing plant was located.

Also in 1983, the city of Hastings reactivated Municipal Well # 18, which is located approximately one-half mile east of Dravo's former manufacturing plant. After receiving complaints about the smell and taste of water drawn from the well, the state of Nebraska tested it. The water samples contained TCE, TCA, and PCE. The EPA later tested soil samples from the immediate area surrounding Dravo's former plant, which the EPA now calls the Colorado Avenue Subsite of the Hastings Groundwater Contamination Site. The EPA detected TCE, TCA, and PCE within the subsite. It found the highest levels of contaminants near the sewer lines running from the plant. On September 28, 1990, the EPA filed a Unilateral Administrative Order directing Dravo to design and execute a plan to decontaminate the subsite.

Each of the defendants has owned or leased property near Dravo's manufacturing plant and within the Colorado Avenue Subsite. Since 1871, the Burlington Northern has owned a 200–foot–wide ribbon of land traversing the northern part of the subsite. Since 1984, Morton Zuber has owned property at 101 South Colorado Avenue, which lies northeast of Dravo's property, and has leased property from the Burlington Northern that abuts his own property. The Zuber Company operates a scrap metal business on Morton Zuber's properties. In 1991, the EPA negotiated a settlement agreement with the three defendants. The agreement stipulates that the Colorado Avenue Subsite is contaminated with TCE, TCA, and PCE; that the defendants have not possessed TCE, TCA, or PCE within the subsite; and that contamination of the subsite was caused by third parties with whom the defendants have not had contractual relationships. The agreement also permits the EPA to enter the defendants' properties upon notice, restricts other property rights of the defendants, and includes a covenant by EPA "not to sue or to take any other civil or administrative action against" the defendants. (Appellant's App. at A31, ¶ 40.)

More important to this appeal, paragraph 47 of the agreement between the EPA and the defendants provides:

> Subject to the reservations of rights in Article X of this Consent Order, EPA agrees that by entering into and carrying out the terms of this Consent Order, Respondents will have resolved their liability to the United States for those matters addressed in the settlement as provided by Section 122(g)(5) of CERCLA [the Comprehensive Environmental Response, Compensation, and Liability Act], 42 U.S.C. § 9622(g)(5), and shall have satisfied their liability for those matters within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

(*Id.* at A33, ¶ 47.)

After the settlement agreement between the EPA and the defendants had been pro-

---

**1.** The Honorable Richard G. Kopf, *United States*   *District Judge for the District of Nebraska.*

posed but before it was entered into, Dravo filed this action. Dravo seeks a declaration that the defendants are legally responsible for contamination of the Colorado Avenue Subsite, a declaration that the defendants are liable for a portion of the remedial costs, and money damages for a portion of the expenditures Dravo has incurred for remedial costs. The defendants filed motions for summary judgment, relying primarily on their agreement with the EPA. The district court granted the motions, *see Dravo Corp. v. Zuber,* 804 F.Supp. 1182, 1189 (D.Neb.1992), and Dravo now appeals.

## II.

Dravo presents two claims on appeal. First, it contends that the district court erred by entering summary judgment. Second, it contends that the district court erred by denying Dravo an opportunity to conduct discovery prior to ruling on the summary judgment motions.

## A.

Dravo contends that the district court should not have entered summary judgment because material facts are in dispute. The key dispute is whether the defendants are protected from third-party contribution actions because of the agreement they made with the EPA. Dravo acknowledges that the defendants and the EPA have an agreement but disputes the legal effect of the agreement. Specifically, Dravo contends that the defendants are not protected from contribution claims until after they fulfill the obligations they assumed when they entered into the agreement.

### 1.

Persons who are responsible for the release or threatened release of hazardous substances may be subject to administrative orders directing them to abate the release and may be fined for violating such orders. *See* 42 U.S.C.A. § 9606(a), (b) (West 1983 & Supp.1993). Persons responsible for the release of hazardous substances also may be liable for the costs of removing or remedying the contamination, the costs associated with

damage to natural resources, and the costs to human health. *See id.* § 9607(a). The EPA may initiate a civil action to enforce an administrative order or to recover the costs of cleanup. *See id.* § 9613(h).

■ The EPA, however, need not litigate every instance of potential liability. "The President, in his discretion, may enter into an agreement with" potentially responsible parties (PRPs) to resolve their potential liability for the costs of cleaning up hazardous substances. *Id.* § 9622(a). "Whenever practicable and in the public interest, as determined by the President, the President shall as promptly as possible reach a final settlement with a PRP in an administrative or civil action under section 9606 or 9607 of this title if" the PRP's responsibility for the release of hazardous substances is either de minimis, *see id.* § 9622(g)(1)(A), or nonexistent, *see id.* § 9622(g)(1)(B). This type of agreement, which is at issue here, is commonly referred to as a "de minimis agreement."

De minimis agreements provide benefits to both the government and the PRPs that enter into them. The government benefits because it may then focus on nonsettling parties who presumably are more responsible for the costs associated with the release of hazardous substances. Settling parties benefit too. For example, "The President may provide a covenant not to sue with respect to the facility concerned to any party who has entered into a settlement under this subsection...." *Id.* § 9622(g)(2). Furthermore, "A party who has resolved its liability to the United States under this subsection shall not be liable for claims for contribution regarding matters addressed in the settlement." *Id.* § 9622(g)(5). Together, the covenant not to sue (the granting of which is within the President's discretion) and the protection from contribution claims (which must accompany a covenant not to sue) provide powerful incentives for PRPs to resolve their potential liability. *See In re Acushnet River & New Bedford Harbor,* 712 F.Supp. 1019, 1026–27 (D.Mass.1989).

### 2.

■ On appeal, as in the district court, the defendants rely on paragraph 47 of the de

minimis agreement to defend against Dravo's action. Paragraph 47 incorporates § 9622(g)(5), which permits settlements to confer upon settling parties protection from any contribution actions brought by nonsettling parties. Dravo contends that the agreement does not confer protection from contribution claims upon the defendants until *after* they complete their performance of the agreement. The defendants contend that they received protection from contribution liability the moment they entered into the de minimis agreement. The EPA, as *amicus curiae*, agrees with the defendants and urges us to affirm.

After reviewing CERCLA's settlement provisions, we agree with the defendants that the de minimis agreement conferred protection from contribution actions upon the defendants at the time the settling parties entered into the agreement. CERCLA directs the President "to facilitate agreements under this section that are in the public interest and consistent with the National Contingency Plan in order *to expedite effective remedial actions and minimize litigation.*" 42 U.S.C.A. § 9622(a) (West Supp.1993) (emphasis added). The statute states that "the President shall *as promptly as possible* reach a *final settlement* with a potentially responsible party." *Id.* § 9622(g)(1) (emphasis added). Congress has further expressed the need for repose by stating, "The President shall reach any such settlement or grant any such covenant not to sue *as soon as possible* after the President has available the information necessary to reach such a settlement or grant such a covenant." *Id.* § 9622(g)(3) (emphasis added). Because protection from contribution actions is mandatory whenever the government covenants not to sue, we can deduce that protection from contribution actions also should attach "as soon as possible." Thus, § 9622 permits, and in fact encourages, the expeditious resolution of potential liability for parties whose responsibility is determined to be de minimis.

Because Congress clearly and repeatedly expressed its desire to minimize litigation by granting de minimis PRPs protection from contribution actions as soon as possible, and because this agreement expressly incorporates that mandate, we cannot interpret the agreement to say that the defendants will receive contribution protection only after they have completed the obligations specified in the agreement. The parties' use of the words "will have resolved" does not, as Dravo argues, indicate that the settling parties intended to defy the purpose of § 9622 by postponing one of the primary purposes of the agreement. The words "will have resolved" are preceded by the words "by entering into and carrying out," thus indicating that the defendants are protected from contribution actions upon signing the agreement and will be protected so long as they comply with the agreement. *Cf. General Time Corp. v. Bulk Materials, Inc.,* 826 F.Supp. 471, 475 (M.D.Ga.1993) (holding that settling party received protection from contribution claims under 42 U.S.C. § 9613(f)(2) despite fact that settlement agreement containing a covenant not to sue failed to mention contribution). In short, the agreement grants the statute's protections immediately, subject to a condition subsequent. Stated another way, the defendants are presently vested with the protections of the statute, subject to later divestment if they fail to "carry out" their part of the agreement with the EPA.

We therefore conclude, contrary to Dravo's assertions, that the de minimis agreement presently protects the defendants from contribution actions. The district court properly determined "that there is no genuine issue as to any material fact and that the *moving* party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### B.

Dravo contends that the district court erred when it did not timely rule on the defendants' motions to stay discovery (thus effectively denying Dravo the right to obtain responses to interrogatories) and when it later granted the defendants' motions to stay discovery pending rulings on the summary judgment motions. Dravo states that it sought to discover information relevant to two issues: (1) whether the defendants in fact contributed to the contamination of the Colorado Avenue Subsite and (2) whether the

defendants had completely performed their obligations under the agreement.

### 1.

Dravo first wanted to discover whether or not the defendants had contributed to the contamination of the site in more than a de minimis way, so as to prevent the defendants from qualifying for a de minimis settlement. *See* 42 U.S.C. § 9622(g)(1) (West Supp.1993). Facts supporting or contradicting the defendants' eligibility for a de minimis agreement would be relevant to Dravo's action only if a nonsettling party were entitled to challenge the validity of a de minimis agreement that is part of an administrative order. We note that Dravo has not presented such an argument to us as a ground for denying summary judgment (but rather has relied solely on the argument that the de minimis settlement does not protect the defendants from contribution actions until they complete their performance), perhaps because it had absolutely no evidence that the defendants were ineligible, *see* Fed.R.Civ.P. 56(e). In any event, we will construe Dravo's discovery argument to contain an assertion that Dravo may defeat the defendants' protection from contribution claims by proving that the defendants were not eligible for a de minimis agreement.

■ The President is authorized to enter into a de minimis agreement to settle either "an administrative or civil action," 42 U.S.C.A. § 9622(g)(1) (West Supp.1993), and the President has delegated this power to the administrator of the EPA, *see United States v. Hercules, Inc.*, 961 F.2d 796, 800 (8th Cir.1992) (citing Exec.Order 12,580). A de minimis agreement "shall be entered as a consent decree or embodied in an administrative order." 42 U.S.C.A. § 9622(g)(4) (West Supp.1993). If a de minimis agreement takes the form of a consent decree that settles a civil action, it requires the approval of a federal district court. *Id.* § 9622(d)(1)(A). The court retains discretion to determine whether the consent decree is fair, reasonable, and adequate. *Hercules*, 961 F.2d at 800. The requirement that a court approve a consent decree permits nonsettling parties to challenge a settling party's eligibility for a de minimis agreement that is contained in a consent decree. *See* 42 U.S.C.A. § 9622(c)(1) ("Nothing in this section shall limit or otherwise affect the authority of any court to review in the consent decree process under subsection (d) of this section any covenant not to sue contained in an agreement under this section."); *United States v. Rohm & Haas Co.*, 721 F.Supp. 666, 681–85 (D.N.J. 1989) (reviewing, when approving consent decree, PRP's challenge to settling party's eligibility for de minimis agreement).

■ But the de minimis agreement before us takes the form of an administrative order. The EPA specifically reserved to itself the right to void the covenant not to sue if it discovers information indicating that the defendants were not eligible for the de minimis agreement. (Appellant's App. at A32, ¶ 43.) Dravo, however, has cited no authority for the proposition that an agreement between an administrative agency and a private party may be invalidated by a third party. Although persons "adversely affected or aggrieved by agency action" generally have a cause of action against an administrative agency, *see* 5 U.S.C.A. § 702 (1977), no cause of action exists if a specific statute precludes judicial review, *id.* § 701(a)(1). In fact, the section of CERCLA authorizing settlements states, "A decision of the President to use or not to use the procedures in this section is not subject to judicial review." 42 U.S.C.A. § 9622(a) (West Supp.1993). The EPA's decision that the defendants were eligible for the de minimis agreement is a necessary precondition for such an agreement and is thus itself a decision "to use or not to use" the de minimis procedures. In light of the explicit language of § 9622(a), which specifically precludes judicial review; the structure of § 9622, which generously gives the President discretion to use settlement mechanisms; and the objective of CERCLA's settlement provisions, which is to allow expedient and efficient settlements of potential liability, it is clear that Congress did not authorize judicial review of the issues Dravo wants reviewed here. *See Block v. Community Nutrition Inst.*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2453, 81 L.Ed.2d 270 (1984). A nonsettling party may not invoke the judicial power to invalidate a de minimis agreement that is

embodied in an administrative order on the ground that a settling party is not eligible for such an agreement.

■ This conclusion does not leave affected parties such as Dravo completely without recourse. Nonsettling parties are entitled to participate in the formation of administrative de minimis agreements. "At least 30 days before any settlement ... may become final under ... subsection (g) of this section in the case of a settlement embodied in an administrative order, the head of the department or agency which has jurisdiction over the proposed settlement shall publish in the Federal Register notice of the proposed settlement." 42 U.S.C. § 9622(i)(1) (West Supp.1993). Any nonsettling party may file written comments during the 30–day period. *Id.* § 9622(i)(2). "The head of the department or agency shall consider any comments filed ... in determining whether or not to consent to the proposed settlement and may withdraw or withhold consent to the proposed settlement if such comments disclose facts or considerations which indicate the proposed settlement is inappropriate, improper, or inadequate." *Id.* § 9622(i)(3). These procedures allow nonsettling parties to present information to the EPA concerning a settling party's eligibility for a proposed de minimis agreement. In this case, Dravo sought an extension of the 30–day period and also sought to reopen the comment period several months later. The EPA granted both requests, and Dravo filed written comments during both periods. The notice-and-comment phase of the administrative proceedings was Dravo's sole opportunity to block the de minimis agreement and thereby prevent the defendants from receiving protection from contribution actions. *See Neighborhood Toxic Cleanup Emergency v. Reilly,* 716 F.Supp. 828, 834–36 (D.N.J.1989) (holding that CERCLA's notice-and-comment provision satisfied nonsettling party's right to due process).

### 2.

■ Dravo also wanted to discover whether the defendants had performed their obligations under the de minimis agreement, so as to prevent the defendants from receiving contribution protection under the agreement. We have just held that the defendants are protected from Dravo's contribution claims unless and until the EPA rescinds the de minimis agreement that created the protection from contribution claims. *See supra* part II.A.2. Because only the EPA can rescind, and because Dravo cannot obtain rescission of the de minimis agreement in this litigation, any information concerning whether the defendants remain in compliance with the agreement is irrelevant. Dravo need only be able to discover whether the EPA has rescinded the agreement. The district court permitted such an inquiry. *See Dravo,* 804 F.Supp. at 1186 n. 3.

■ A party resisting a motion for summary judgment should be permitted to discover facts necessary for its response. *E.g., Costello, Porter, Hill, Heisterkamp & Bushnell v. Providers Fidelity Life Ins. Co.,* 958 F.2d 836, 839 (8th Cir.1992). The information Dravo sought to discover was not necessary because Dravo had no viable cause of action. Thus, the district court properly denied Dravo an opportunity to conduct further discovery.

### III.

The district court did not err when it denied Dravo's requests for discovery and when it entered summary judgment for the defendants. Therefore, we affirm the judgment of the district court.