**DRAVO CORPORATION, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, et al., Defendants,**

and

**Morton Zuber, Zuber Company, and Burlington Northern Railroad Company, Movants.**

**No. 4:CV94–3345.**

United States District Court, D. Nebraska.

Feb. 14, 1995.

---

Paul R. Elofson, McGill, Gotsdiner, Workman & Lepp, Omaha, NE, Lawrence A. Demase, Joseph W. Klein, Joseph F. Rodkey, Jr., Reed Smith Shaw & McClay, Pittsburgh, PA, for plaintiff.

Richard S. Mannella, Stephen F. Brock, Manta and Welge, Philadelphia, PA, for defendants.

Howard Kenison, John P. Jones, Craig N. Johnson, Kutak Rock, Denver, CO, Robert M. Zuber, Zuber & Ginsburg, Omaha, NE, for movants Morton Zuber and Zuber Co.

Susan M. Griesgraber, Robins, Kaplan, Miller & Ciresi, Chicago, IL, Robert M. Zuber, Zuber & Ginsburg, Omaha, NE, for movant Burlington Northern R. Co.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Pursuant to Federal Rule of Civil Procedure 45, Morton Zuber and Zuber Corporation (hereinafter collectively "Zuber") and Burlington Northern Railroad Company ("Railroad") have moved (Filings 1 & 3) as non-parties to litigation in the United States District Court for the Southern District of Alabama to quash various subpoenas issued under the authority of this court and served upon them by Dravo Corporation ("Dravo").

I shall grant the substance of the motions finding that, in the absence of a carefully crafted protective order, which cannot under the circumstances be imposed, the subpoenas require disclosure of privileged or other protected matters and, alternatively, that the subpoenas subject the movants to an undue burden. Fed.R.Civ.P. 45(c)(3)(A)(iii) & (iv). I decline to award costs and attorney fees. I further decline to award sanctions. My reasons for these actions are set forth below.

### I.

This controversy has to do with soil and groundwater contamination located at a site known as the Colorado Avenue Subsite of the Hastings Groundwater Contamination Site (the "Colorado Avenue Subsite") located in or near Hastings, Nebraska.

Dravo, Zuber, and the Railroad have previously engaged in protracted litigation regarding the Colorado Avenue Subsite. *Dravo Corp. v. Zuber*, 804 F.Supp. 1182 (D.Neb. 1992) (*Dravo I*), aff'd, 13 F.3d 1222 (8th Cir.1994) (*Dravo II*) (holding that (a) Zuber and the Railroad, by virtue of de minimis settlement agreement with the Environmental Protection Agency (EPA), were protected from contribution liability asserted by Dravo, (b) Dravo was not entitled to engage in discovery directed at Zuber and the Railroad relating to whether Zuber and the Railroad made misrepresentations to EPA regarding the settlement or whether Zuber and the Railroad were in compliance with the settlement agreement, and, accordingly, (c) district court's grant of summary judgment and refusal to permit discovery was affirmed) (hereinafter the "contribution suit").

One of the litigated issues in the contribution suit, argued to the district court and the court of appeals, was whether Dravo should be permitted to engage in discovery directed at Zuber and the Railroad. Zuber and the Railroad had entered into a settlement agreement with EPA wherein Zuber and the Railroad made certain representations to the EPA. The settlement agreement also required Zuber and the Railroad to do certain things or potentially forfeit the benefit of the settlement agreement.

Dravo wanted to determine by way of discovery directed at Zuber and the Railroad (1) whether the settlement agreement was based upon misrepresentations, *Dravo I*, 804 F.Supp. at 1187, and (2) whether Zuber and the Railroad were in compliance with the settlement agreement. *Id.* at 1186 & n. 3. Citing 42 U.S.C. § 9622(g)(5), both the district court and the court of appeals held that one of the primary benefits of the settlement agreement was that it precluded a suit for contribution against Zuber and the Railroad by other potentially liable parties such as Dravo, and the preclusive effect of the settlement agreement also extended to discovery aimed at determining whether Zuber and the Railroad made misrepresentations to the EPA or whether Zuber and the Railroad were in compliance with the settlement agreement. *Dravo I*, 804 F.Supp. at 1186–88; *Dravo II*, 13 F.3d at 1227–28.

Indeed the court of appeals made clear that: "A nonsettling party may not invoke the judicial power to invalidate a de minimis agreement that is embodied in an administrative order on the ground that a settling party is not eligible for such an agreement." *Dravo II*, 13 F.3d at 1227–28. The court further emphasized that: "Because only the EPA can rescind, and because Dravo cannot obtain recission of the de minimis agreement in this litigation, any information concerning wheth-

er the defendants remain in compliance with the agreement is irrelevant." *Id.* at 1228.

After Dravo lost the contribution suit, Dravo commenced an action against various insurance companies which had allegedly issued insurance policies which might provide indemnity to Dravo regarding the contamination at the Colorado Avenue Subsite (hereinafter the "insurance suit"). This litigation was filed in the United States District Court for the Southern District of Alabama.[1] Neither Zuber nor the Railroad were made parties to the insurance suit. Nevertheless, Dravo sought discovery in the insurance suit from Zuber and the Railroad.

As to Zuber, Dravo caused to be issued two types of subpoenas. First, Dravo caused to be issued an inspection subpoena that purported to require Zuber to allow Dravo to go upon Zuber's land for the purpose of allowing Dravo to inspect and sample the interiors of storm sewers. (Filing 2, Ex. D.) The second type of subpoena was a deposition subpoena which commanded Morton Zuber to attend a deposition and produce various documents, including "[a]ll documents pertaining to contamination at the Colorado Avenue subsite." (Filing 2, Ex. F.)

Zuber proposed that Dravo limit its discovery in the insurance suit to matters which were not addressed in the EPA's settlement agreement. (Filing 2, Ex. E.) The insurance company defendants in the insurance suit informally agreed to "the non-use of information gained through the subpoena ... outside the context of the [insurance suit]." (Br. of Defs. Liberty Mutual, et al., at 4.)[2] Dravo, however, was unwilling to limit its discovery. (Filing 2, Ex. H.)

As to the Railroad, Dravo caused to be issued an inspection subpoena that required the Railroad to allow Dravo to go upon the Railroad's land for the purpose of allowing Dravo to inspect and sample the interiors of storm sewers. (Filing 3, Ex. A.)

Because the subpoenas were issued under the authority of this court pursuant to Federal Rule of Civil Procedure 45(a)(2), Zuber and the Railroad filed their motions to quash here. The matter is now ripe for decision.

## II.

I shall separately consider the merits of the motions and then the issue of costs, fees and sanctions.

### A.

■ " '[T]he very purpose of a landowner de minimis settlement is to give a party who has a viable defense *legal repose* and *enable that party to avoid litigation costs.*' " *Dravo I,* 804 F.Supp. at 1187 (quoting EPA's Responsiveness Summary) (emphasis added). The settlement agreement implements the relevant statutory scheme which "directs the President 'to facilitate agreements under this section that are in the public interest and consistent with the National Contingency Plan in order *to expedite effective remedial actions and minimize litigation.*' " *Dravo II,* 13 F.3d at 1226 (quoting 42 U.S.C. § 9622(a)) (emphasis in original). Thus, Zuber and the Railroad have an enforceable right, as declared in *Dravo I* and *Dravo II,* to insist that the twin aims of the de minimis settlement agreement—legal repose and avoidance of litigation costs—are not frustrated by discovery requests *in any context.*

---

1. The case was styled *Dravo Corporation v. The Hartford Accident and Indemnity Company, Liberty Mutual Insurance Company, and Bituminous Casualty Corporation,* 92–0674–P–C (S.D.Ala.). (Filing 2, Ex. C.)

2. The insurance company defendants have caused to be issued subpoenas in another forum, and they appeared in this forum apparently to make their position clear and to apprise this court that the ruling of this court should be limited to the determination of the dispute between Dravo, Zuber and the Railroad regarding the Nebraska subpoenas. As no motion has been presented regarding the subpoenas issued by the insurance company defendants, my decision in this case obviously does not directly resolve any case or controversy regarding that process. Whether and to what extent the insurance company defendants, by submitting a brief to this court, are bound by this decision by the doctrine of res judicata (collateral estoppel) for other purposes is a matter I do not decide. But, as later noted, I question whether I have jurisdiction over the insurance companies for purposes of binding them to a protective order.

**1.**

■ Because Dravo has been unwilling to limit how it will use the information, Dravo's discovery efforts threaten to undermine the purposes of the settlement agreement in at least three ways.

First, Dravo might use the information obtained in the inspection of the sewers or the deposition of Mr. Zuber to collaterally attack the EPA settlement agreement by obtaining information to further Dravo's argument that the settlement agreement was based upon misrepresentations or that Zuber and the Railroad are not in compliance with the settlement agreement.

For example, Dravo (or its insurance companies) might submit information, obtained during discovery in the insurance suit, to the EPA in an effort to convince EPA to rescind the settlement agreement. *Dravo II*, 13 F.3d at 1227 ("The EPA specifically reserved to itself the right to void the covenant not to sue if it discovers information indicating that the defendants were not eligible for the de minimis agreement.").[3]

If Dravo was permitted to obtain and use information for this purpose, such action would frustrate the "repose" purpose of the de minimis settlement agreement. Indeed, both *Dravo I* and *Dravo II* explicitly held that Dravo was not entitled to this type of information for the purpose of attacking either the underlying basis for the de minimis settlement agreement or for the purpose of determining whether Zuber and the Railroad were in compliance with the agreement. *See, e.g., Dravo II*, 13 F.3d at 1226–28.

Second, Dravo might use the information to try to make Zuber and the Railroad parties to the insurance suit, thereby directly taking action barred by the de minimis settlement agreement. Or, as a variation on that same theme, Dravo might try to induce or persuade the insurance company defendants to endeavor to make Zuber and the Railroad parties to the insurance suit, thereby indirectly taking action barred by the settlement agreement.

This too would frustrate the "repose" purpose of the de minimis settlement agreement since Zuber and the Railroad have immunity from *any claim* which is in substance a contribution claim, even if the claim is nominally called a declaratory action, an indemnity action, a breach of contract action, a quasi-contract action, a quantum meruit action, an unjust enrichment action, a state law action or something else. *Dravo I*, 804 F.Supp. at 1185–86 ("The courts have consistently enforced CERCLA by providing settling parties with immunity from *any claim* regarding matters addressed in the settlement with the government provided the non-settling party's claim is in substance a claim for contribution, even though the claim may be called something else.") (emphasis in original) (citations omitted).

Third, given the very ambiguity of the possible uses of an unlimited discovery request from Dravo, at a minimum, Zuber and the Railroad would be required to expend significant legal costs to insure that Zuber and the Railroad did not waive or somehow give up the benefits of the settlement agreement (particularly the ban on contribution) by responding to Dravo's discovery requests.

In turn forcing Zuber and the Railroad to incur legal costs to preserve what Zuber and the Railroad have already obtained in the settlement agreement—repose—would obviously frustrate the agreement's purpose of avoiding litigation cost. Significantly, the relevant statutory scheme, upon which the agreement is founded, was expressly intended to *"minimize litigation"* and the costs attendant thereto. *Dravo II*, 13 F.3d at 1226 (quoting 42 U.S.C. § 9622(a)) (emphasis in original). Consequently, it is appropriate to construe and enforce the agreement so as to "minimize litigation" and associated costs.

In summary, I find and conclude that the subpoenas, unlimited as to the uses to which the discovered information may be used, require disclosure of privileged or other protected matters and, alternatively, that the subpoenas subject the movants to undue bur-

---

**3.** Although it is true that following *Dravo II* Dravo could not attack the settlement agreement in court since only the EPA can rescind the agree-

ment, Dravo could submit information to EPA in an effort to convince EPA to rescind.

den. Fed.R.Civ.P. 45(c)(3)(A)(iii) & (iv). Accordingly, the movants are entitled to have the subpoenas quashed.

### 2.

Two additional points merit discussion. I turn to those issues now.

■ First, a properly crafted protective order might obviate these problems. 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 at 40 (1995). But there are two serious problems which counsel against me trying to craft and impose a protective order without the full cooperation of Dravo, Zuber, the Railroad and the insurance companies. I do not presently have such cooperation, as evidenced by Dravo's unwillingness to agree to any limitation on the uses to which it might put the discovered information.

To start with, I doubt that I have jurisdiction over the insurance companies. Hence, I question whether any protective order I issued would be beneficial to Zuber or the Railroad unless the insurance companies submitted to the jurisdiction of this court.

Still further, it is probable that any protective order this court crafted would have to be adopted by the court in Alabama to provide any significant protection for Zuber and the Railroad. While I might be willing to transfer the task of crafting and imposing a protective order to the court in Alabama, 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2464 at 79 (1995) (citing *In re Digital Equip. Corp.*, 949 F.2d 228 (8th Cir.1991)), I have no indication that Dravo, Zuber and the Railroad would agree to such transfer. Moreover, I am most hesitant to increase the legal costs of Zuber and the Railroad by forcing them to appear in Alabama to engage in the process of crafting a protective order without either their agreement or Dravo's willingness to reimburse them for their costs.

Accordingly, I decline to impose a protective order in lieu of quashing the subpoenas.[4]

Second, Dravo argues, citing *Transtech Industries, Inc. v. A & Z Septic Clean*, 5 F.3d 51, 58 (3rd Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2692, 129 L.Ed.2d 823 (1994) (holding that parties who settled with EPA when later sued could not take an interlocutory appeal from denial of their motion for summary judgment), that it is improper to construe the settlement agreement broadly to grant Zuber and the Railroad "immunity" from discovery. Rather, Dravo argues that the agreement should be given a limited construction. (Br. of Dravo Opp'n Mots. Quash at 13–14.)

Initially, *Transtech* dealt with a question of appealability. Thus, *Transtech* did not purport to address the discovery issues presented in this case. Moreover, I am bound by *Dravo II*, not *Transtech.* Finally, and most importantly, I agree with Dravo that the settlement agreement in this case does not immunize Zuber and the Railroad from *all* discovery. Rather, as I hope I have made clear above, the settlement agreement *only* immunizes Zuber and the Railroad from discovery because Dravo refuses to limit the uses to which it will put the discovered information and therefore the discovery threatens to frustrate the dual aims of the settlement agreement.

### B.

Zuber and the Railroad seek costs, attorney fees and sanctions. I assume they seek these costs, fees and sanctions pursuant to Fed.R.Civ.P. 45(c)(1), although they do not clearly say so.

■ Rule 45(c)(1) authorizes a court to impose sanctions upon a party or the party's attorney who fails to take "reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." *See also* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463 at 68 (1995). When a violation of Rule 45 is asserted, the assertion should be analyzed like a claimed violation of Rule 11. *Mann v. University of Cincinnati,* 152 F.R.D. 119, 126 n. 2 (S.D.Ohio 1993) (affirm-

---

4. I do not wish to be misunderstood. I am willing to assist the parties (including the insurance companies) in arriving at a proper protective order. I am not willing, however, to impose such an order without the active participation and agreement of the parties.

ing award by magistrate judge of sanctions under Rule 45).

 In this case Dravo's discovery efforts were objectively reasonable because its legal contention that it had a right to the documents was "warranted ... by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law...." Fed.R.Civ.P. 11(b)(2). In other words, the question of whether the preclusive nature of the settlement agreement extended to discovery requests in collateral litigation was not clear. Accordingly, Dravo and its counsel could reasonably assert, from an objective point of view, a limited reading of the settlement agreement and therefore they could issue discovery process based upon such a reading without fear of sanctions.

Accordingly,

IT IS ORDERED that:

(1) The motions to quash (Filings 1 & 3) are granted on the merits;

(2) The motions (Filings 1 & 3) are denied to the extent they request costs, attorney fees and sanctions;

(3) A separate judgment shall issue providing that: "Judgment is entered for movants quashing the subpoenas, but denying movants' request for costs, attorney fees and sanctions."

## JUDGMENT

Pursuant to the court's Memorandum and Order previously filed in this matter, judgment is entered for movants quashing the subpoenas, but denying movants' request for costs, attorney fees and sanctions.