**UNITED STATES of America, and State of Indiana, Plaintiffs,**

v.

**SCA SERVICES OF INDIANA, INC., Defendant.**

**SCA SERVICES OF INDIANA, INC., Third Party Plaintiff,**

v.

**OMNISOURCE CORP., et al., Third Party Defendants.**

**Civ. No. 1:89cv29.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

April 18, 1994.

Timothy J. Junk, Angila M. Prather, Office of IN Atty. Gen., Indianapolis, IN, for State of IN.

Deborah M. Leonard, David H. Miller, U.S. Attys. Office, Fort Wayne, IN, Maureen M. Katz, U.S. Dept. of Justice, Environmental Enforcement Section, Environment and Natural Resources Div., Washington, DC, for U.S.

J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, IN,. Percy L. Angelo, Patricia F. Sharkey, Kurt D. Williams, Thomas W. Dimond, Mayer Brown and Platt, Chicago, IL, for SCA Services of IN, Inc.

Alan VerPlanck, Robert S. Walters, David R. Steiner, James Fenton, Barrett and McNagny, Fort Wayne, IN, for Omnisource Corp.

Solomon L. Lowenstein, Jr., Fort Wayne, IN, for A & J Enterprises, Inc., Almet Inc.

Larry L. Barnard, Milford M. Miller, Miller Carson Boxberger and Murphy, Fort Wayne, IN, for Advanced Mach. & Tool Corp., Auto Trim Co.

Roseann Oliver, Chicago, IL, for Aeroquip Corp.

Thomas A. Coz, Frederick X. Shadley, Benesch Freidlander Coplan and Aronoff, Cincinnati, OH, for Allen County Motor Service, Gen. Elec. Co., ITT Corp. dba ITT Aerospace, Knepper Cartage Inc., Magnovox Co., Meyer Stamping and Mfg. Co., Protective Coatings, Rea Magnet Wire Co., Inc., United Technologies Automotive Systems, Inc. dba Sheller Globe Corp.

Auto Trim Co., pro se.

Gaspare G. Ruggirello, Gabriel M. Rodriguez, Frith C. Crandall, Chicago, IL, for Borg–Warner Corp.

Vincent J. Backs, Beers Mallers Backs and Salin, Fort Wayne, IN, for Branstrator Aluminum.

Richard P. Samek, Miller Carson Boxberger and Murphy, Fort Wayne, IN, for Chalfant–Perry–Klaehn Funeral Home.

D.H. Brennan, Jr., Chicago, IL, for Chemcentral Corp.

Abraham Singer, David L. Maurer, Thomas P. Wilczak, Detroit, MI, for Chrysler Corp., Terex Trailer Corp.–Fruehauf Trailer Operations, Uniroyal Fleet Service.

Robert B. Wright, Robert B. Wright and Associates, PC, Fort Wayne, IN, for Colwell/General Inc., Leepoxy Plastics Inc.

William J. Pinamont, Philadelphia, PA, for Consol. Rail Corp.

Barry L. Malter, Warren Anthony Fitch, Julie A. Weisman, Washington, DC, for Cooper Tire & Rubber Co.

Thomas A. Coz, Benesch Freidlander Coplan and Aronoff, Cincinnati, OH, Andrea Kojm Thomas, Corning, NY, for Corning Glass Works.

Arthur G. Surguine, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, Anita Crews, Susan M. Griesgraber, John C. Knoepfler, for Crosby Group, Inc.

Ronald J. Tirpak, Schenkel and Tirpak, Fort Wayne, IN, for Custom Tube Co., Inc.

Troy R. Taylor, Dykema Gossett, Detroit, MI, for Dana Corp.

Sanford M. Stein, Lori Prokes Davis, James R. Morrin, Wildman Harrold Allen & Dixon, Chicago, IL, for Deister Concentrator Co. Inc.

Todd A. Mikesell, Scott E. Shockley, DeFur Voran Hanley Radcliff and Reed, Muncie,. IN, for William A. Didier & Sons, Inc.

Robert S. Walters, James Fenton, Barrett and McNagny, Fort Wayne, IN, for Barry Dorman, Barry Pass, Leonard Rifkin.

Sanford M. Stein, Lori Prokes Davis, Wildman Harrold Allen & Dixon, Chicago, IL, for Essex Group Inc.

Thomas B. Smith, J. Daniel Berry, Washington, DC, C. Erik Chickedantz, Thomas M. Gallmeyer, Hawk Haynie Gallmeyer and Chickedantz, Fort Wayne, IN, for Evans Product Co.

Troy R. Taylor, Dykema Gossett, Detroit, MI, Nancy Martin, for Federal–Mogul Corp.

Arthur G. Surguine, James J. Shea, Robert E. Kabisch, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, for Fleetwood Motor Homes of IN, Inc., Fort Wayne Foundry.

Harvey L. Friedman, Laurence Y. Solarsh, Solomon L. Lowenstein, Jr., Fort Wayne, IN, for Fonda Container.

Arthur G. Surguine, James J. Shea, Hunt Suedhoff Borror and Eilbacher, W. Michael Horton, Burt Blee Dixon and Sutton, Fort Wayne, IN, for Fort Wayne Clutch, Inc.

William D. Evans, Jr., Washington, DC, for Fort Wayne Newspapers, Inc.

Andrea L. Hermer, F. Dennis Logan, Rothberg Gallmeyer, Fruechtenicht and Logan, Fort Wayne, IN, for Fort Wayne Public Transportation Corp.

Thomas P. Yoder, Barrett and McNagny, Fort Wayne, IN, for Fort Wayne Structural Steel Co., Inc.

Travis S. Friend, Frank J. Gray, Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, for Gladieux Refinery Inc.

Thomas P. Wilczak, Detroit, MI, for BF Goodrich Auto Service.

Larry D. Espel, Peter L. Tester, Minneapolis, MN, for Glidden Paint Center.

Ronald B. Noga, Columbus, OH, for Grossman Industries Inc.

W.C. Blanton, Jodie L. Miner, Ice Miller Donadio and Ryan, Indianapolis, IN, for Harris–Kayot, Inc., Phelps Dodge Corp.

Daniel J. Borgmann, Helmke Beams Boyer and Wagner, Solomon L. Lowenstein, Jr., Fort Wayne, IN, for Hassan Barrel Co.

Bryan G. Tabler, Barnes and Thornburg, Indianapolis, IN, Thomas A. Coz, Frederick X. Shadley, Benesch Freidlander Coplan and Aronoff, Cincinnati, OH, for Indiana Michigan Power Co.

Solomon L. Lowenstein, Jr., Fort Wayne, IN, for IN Stamp Co., Inc., Perfection Varnish Co. Inc.

Thomas A. Coz, Frederick X. Shadley, Benesch Freidlander Coplan and Aronoff, Cincinnati, OH, Carl S. Grabinski, Chicago, IL, for Joslyn Mfg. Co.

Edward E. Beck, John B. Powell, Daniel Serban, Shambaugh Kast Beck and Williams, Fort Wayne, IN, for K & G Mfg. Co., Inc.

Arthur G. Surguine, James J. Shea, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, for Keefer Printing Co., Meek Mack Body Shop.

Michael J. Hughes, Edmund B. Moran, Jr., Levin and Sons, Inc., Chicago, IL, for Levin & Sons.

Loren K. Allison, John C. Theisen, Gallucci Hopkins and Theisen, PC, Fort Wayne, IN, Dean S. Applefield, for Lydall, Inc.

Gabriel M. Rodriguez, Frith C. Crandall, Chicago, IL, Tim A. Grogg, Columbus, IN, for Maremont Corp.

Michael P. Carlton, Milwaukee, WI, for Mobile Aerial Towers Inc.

Michael D. Sears, Singleton Crist Patterson Austgen and Lyman, Munster, IN, Mark Mester, Laurence Levine, Mary Rose Alexander, Chicago, IL, for Navistar Intern. Transp. Corp.

Fredrick R. Tourkow, Fort Wayne, IN, for New Haven Wire and Cable Co.

John C. Duffey, Anthony S. Benton, Stuart and Branigin, Lafayette, IN, for Norfolk & Western Ry. Co.

Maureen Grimmer, Eichhorn Eichhorn and Link, Hammond, IN, for Northern IN Public Service Co.

Loren K. Allison, John C. Theisen, Gallucci Hopkins and Theisen, PC, Fort Wayne, IN, Raymond C. Marshall, David E. Moser, San Francisco, CA, for Pines of America/Powerwheels Inc.

James W. Clark, Baker and Daniels, Indianapolis, IN, Holly D. Warshauer, Fort Wayne, IN, for Potlatch Corp.

Stephen J. Lerch, Fort Wayne, IN, for Precision Litho Inc.

Arthur G. Surguine, James J. Shea, Hunt Suedhoff Borror and Eilbacher, Paul B. McNellis, Wyss McNellis Riebenack and Myers, Fort Wayne, IN, for Ream–Steckbeck Paint Co.

Mark A. Goldsmith, C.J. Dunsky, Honigman Miller Schwartz and Cohn, Detroit, MI, for Rieke Corp.

Thomas A. Coz, Frederick X. Shadley, Benesch, Freidlander Coplan and Aronoff, Cincinnati, OH, Diana H. Hull, Miami, FL, for Ryder Truck Rental aka Fort Wayne Leasing Co.

Michael S. Talbett, M.D. Hayes, J.L. Lucari, Holleb and Coff, Chicago, IL, for Safety Kleen Envirosystems Co. fka McKesson Envirosystems Co. fka Inland Chemical Corp.

Thomas A. Coz, Frederick X. Shadley, Benesch Freidlander Coplan and Aronoff, Cincinnati, OH, Nicholas J. DeBenedictis, Philadelphia, PA, for Scott Paper Co.

Norman L. Roelke, Fort Wayne, IN, for Tokheim Corp.

John C. Duffey, Anthony S. Benton, Stuart and Branigin, Lafayette, IN, Arthur G. Surguine, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, for Triangle Fleet Service.

David G. Thomas, Daniels Sanders Pianowski Hamilton and Todd, Elkhart, IN, for United Limo, Inc. dba IN Motor Bus Co.

Ronda P. Bayer, Minneapolis, MN, Solomon L. Lowenstein, Jr., Fort Wayne, IN, for Valspar Corp.

Thomas A. Coz, Frederick X. Shadley, Benesch Freidlander Coplan and Aronoff, Cincinnati, OH, Terrence M. Fay, Columbus, OH, for Van Wert, Ohio–Transfer Station.

Stephen Q. Giblin, Matthew L. Kuryla, Cleveland, OH, for Wayne Home Equipment Co.

Frank J. Deveau, Lawrence A. Vanore, Sr., Sommer and Barnard, Indianapolis, IN, for Zollner Corp.

Larry D. Espel, Peter L. Tester, Minneapolis, MN, for Glidden Paint Center.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on a joint motion to dismiss filed by thirteen third-party defendants[1] on December 20, 1993. This motion to dismiss states that it has been filed "on behalf of all other Third–Party Defendants unless any Third–Party Defendant by counsel disclaims joinder in this motion within five (5) days of the filing hereof...." On December 21, 1993, third-party defendant United Tech Auto filed a disclaimer to the motion to dismiss, and on December 27, 1993, third-party defendant Essex Group Inc. also filed a disclaimer to the motion to dismiss.

Briefing on the motion was completed on March 21, 1994[2]. Also on March 21, 1994, the third-party defendants filed a request for oral argument. In light of the fact that the parties have submitted extensive, well-written briefs that fully address the issues before the court, the court finds that oral argument will not be necessary in this case.

### Background

The government initiated this environmental litigation on February 22, 1989 by filing a complaint against SCA Services of America ("SCA") pursuant to §§ 104(a), 104(b), 106, and 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9604(a), 9604(b), 9606, and 9607(a) ("CERCLA"). In that complaint, the government sought to recover past and future response costs allegedly incurred, or to be incurred, by the government at the Fort

---

1. The thirteen moving parties are: A & J Enterprises, Inc.; Almet, Inc.; The Fonda Group; Gladieux Refinery; Hassan Barrel Co., Inc.; Indiana Stamp Co., Inc.; Perfection Varnish Co., Inc.; Colwell/General, Inc.; The Valspar Corp.; The Uniroyal Goodrich Tire Co.; Fruehauf Trailer Corp.; B.F. Goodrich Auto Service; and Navistar International Transportation Corp.

2. The government sought, and was granted, leave to file a memorandum addressing an issue presented by the third-party defendants' motion to dismiss. The government's brief was filed on February 18, 1994.

Wayne Reduction Site in Allen County, Indiana ("the site"). The government alleged in its complaint that, from 1967 to 1976, a variety of hazardous substances (industrial wastes, industrial liquids and sludges) were disposed of at the site. It has been estimated that remediation costs to clean up the site could exceed $15 million. The government's complaint sought to require SCA to comply with all the terms of an August 26, 1988 Record of Decision ("ROD") which was signed by the Regional Administrator of the United States Environmental Protection Agency ("USEPA").

On the same date the government filed its complaint, February 22, 1989, the government lodged a proposed Consent Decree with this court, pursuant to 28 C.F.R. § 50.7. SCA had signed this Consent Decree on October 3, 1988, approximately six weeks after entry of the USEPA's ROD. Pursuant to the terms of this Consent Decree, SCA agreed to perform remedial work outlined in the ROD and make specified payments to the government for oversight response costs. This court entered the Consent Decree on July 18, 1989, and SCA has been in compliance with the Consent Decree since that time.

On September 11, 1992, SCA filed its third-party complaint against numerous third-party defendants, alleging that the third-party defendants are liable to SCA for the response costs and reimbursement costs it has incurred and will incur pursuant to the Consent Decree in connection with remediation of the site. On November 23, 1992, SCA filed its first amended third-party complaint. SCA's complaint recites three causes of action under CERCLA: (1) a "cost recovery" claim[3] under CERCLA § 107(a), 42 U.S.C. § 9607(a)[4]; (2) an express contribution claim[5] under CERCLA § 113(f)(1), 42 U.S.C. § 9613(f)(1)[6]; and (3) a declaratory judg-

---

3. Paragraph 110 of SCA's first amended third party complaint alleges that:

Each of the third party defendants are jointly and severally liable under section 107(a) of CERCLA, 42 U.S.C. § 9607(a) for the costs incurred and to be incurred by SCA, pursuant to the Consent Decree and in satisfaction of the claims made by the United States and the State of Indiana.

4. 42 U.S.C. § 9607(a) provides in relevant part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
(1) the owner and operator of a vessel or a facility,
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan....

5. Paragraph 112 of SCA's first amended third-party complaint alleges that:

SCA is entitled to contribution, under section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), from each of the third party defendants for the costs incurred and to be incurred by SCA pursuant to the Consent Decree and in satisfaction of the claims made by the United States and the State of Indiana.

6. 42 U.S.C. § 9613(f)(1) provides as follows:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

ment claim [7] pursuant to CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2) [8].

## Discussion

In support of their motion to dismiss, the third-party defendants contend that all three of SCA's claims are actually contribution claims pursuant to CERCLA § 113(f)(1) and, as such, are governed by the three year statute of limitations set forth in § 113(g)(3) [9]. Pursuant to § 113(g)(3), any contribution claim asserted by SCA expired on July 18, 1992, three years after July 18, 1989, the date this court entered the Consent Decree. Accordingly, the third-party defendants argue that SCA's complaint, which was originally filed on September 11, 1992, is untimely and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Alternatively, the third-party defendants request a judgment on the pleadings pursuant to Rule 12(c) and Rule 12(h)(2).

Specifically, the third-party defendants argue that a contribution claim under § 113(f)(1) is the only claim available to SCA, and SCA may not bring a cost recovery claim under § 107(a). The third-party defendants contend that § 107(a) does not provide SCA a separate, independent cause of action against the third-party defendants that is not governed by the requirements of contribution claims under § 113(f)(1) [10]. The third-party defendants take the position that the two statutory sections read together set forth the liability provisions, i.e., § 107(a), and the cost recovery mechanism, i.e., § 113(f), for third-party claims filed subsequent to a government-initiated settlement. The third-party defendants argue that § 107(a) only provides a mechanism for the recovery of response costs from parties liable in the first instance, and the only way a liable party can recover from other liable parties (following a settlement with the government) is by way of a contribution action pursuant to § 113(f)(1).

---

7. Paragraph 114 of SCA's first amended third-party complaint alleges that:

    SCA is entitled to a declaratory judgment, under section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), finding each third party defendant liable for costs and damages incurred and to be incurred by third party plaintiff in compliance with the Consent Decree and in satisfaction of the claims made by the United States and the State of Indiana in this action, and also for response costs and damages that may form the subject of any future action by or against SCA under section 107 of CERCLA, 42 U.S.C. § 9607, in connection with the Fort Wayne Reduction Site.

8. 42 U.S.C. § 9613(g)(2) provides as follows:

    An initial action for recovery of the costs referred to in section 9607 of this title must be commenced—
    (A) for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under section 9604(c)(1)(C) of this title for continued response action; and
    (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action brought under this subparagraph.
    In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions

to recover further response costs or damages. A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action. Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

9. 42 U.S.C. § 9613(g)(3) provides as follows:

    No action for contribution for any response costs or damages may be commenced more than 3 years after—
    (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or
    (B) the date of any administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

10. The third-party defendants' arguments on this point tend to shift focus from time to time. They argue to this court that SCA can only bring a claim under § 113, the contribution section. They also argue that SCA may bring its action under § 107, but such an action, being in essence an action for contribution, is governed and limited by the provisions in § 113, including § 113(g)(3)'s three-year statute of limitations for contribution actions.

According to the third-party defendants, § 107 simply does not provide a party (such as SCA) that has been sued by and settled with the USEPA, an independent right, free from the requirements of § 113(f)(1), to recover from other liable parties for the response costs it incurs in connection with that settlement. The third-party defendants thus conclude that SCA's only avenue for recovery under CERCLA is a contribution action under § 113(f)(1), and all potential § 113 contribution claims in this case are time barred [11].

The third-party defendants focus on the language of § 113(f)(1) and claim that the plain language of § 113(f)(1) shows that Congress clearly intended that a party such as SCA be relegated solely to a contribution action for equitable apportionment. SCA, however, focuses on the language of § 107(a)(4)(B) and argues that the plain language of § 107(a)(4)(B) guarantees to SCA the right to pursue a cost recovery action for the costs it has incurred in cleaning up the site.

Employing a straight-forward reading of § 107(a)(4)(B), it is clear that SCA is "any other person" who has "incurred" response costs. Thus, absent some clear indication to the contrary, SCA has a strong argument that it should be able to bring an action under § 107(a)(4)(B) to attempt to recover its response costs from potentially liable third parties. Several district courts across the country have specifically held that a settling party such as SCA may bring an action in its own behalf to collect cleanup costs against parties allegedly responsible for dumping hazardous substances at the site at which response costs are being incurred. *See e.g., Barton Solvents v. Southwest Petro-Chem*, 1993 WL 382047, *3 (D.Kan. Sept. 14, 1993); *Charter Township of Oshtemo v. American Cyanamid*, 1993 WL 561814, *1, 1993 U.S.Dist. LEXIS 13176, *2 (W.D.Mich. Aug. 19, 1993); *United States v. Kramer*, 757 F.Supp. 397, 416 (D.N.J.1991); *Burlington Northern Railroad Co. v. Time Oil Co.*, 738 F.Supp. 1339 (W.D.Wash.1990); *Key Tronic Corp. v. United States*, No. C-89-694-JLQ

(E.D.Wash. Aug. 9, 1990); *United States v. Hardage*, 19 Haz.W.Lit.Rep. 18307 (W.D.Okla. Sept. 22, 1989); *Allied Corp. v. Acme Solvents Reclaiming, Inc.*, 691 F.Supp. 1100, 1118 (N.D.Ill.1988); *Sand Springs Home v. Interplastic Corp.*, 670 F.Supp. 913, 916 (N.D.Okla.1987).

Unfortunately, however, the vote on this issue is far from unanimous and several district courts have specifically held that a responsible party may not assert a § 107(a)(4)(B) cost recovery claim against another potentially responsible party, but may only seek contribution under § 113(f). *See e.g., United Technologies Corp. v. Browning–Ferris Indus.*, Civil No. 92–0206–B, 1993 U.S.Dist. LEXIS 19162 (D.Maine Aug. 11, 1993); *United States v. ASARCO, Inc.*, 814 F.Supp. 951 (D.Colo.1993); *Denver v. Adolph Coors Co.*, 829 F.Supp. 340, 346 (D.Colo. 1993); *Transtech Indus., Inc. v. A & Z Septic Clean*, 798 F.Supp. 1079 (D.N.J.1992); *Dravo Corp. v. Zuber*, 804 F.Supp. 1182, 1187 (D.Neb.1992); *Avnet, Inc. v. Allied–Signal, Inc.*, 825 F.Supp. 1132 (D.R.I.1992).

Of all the above-cited cases, only one is directly on point: *Browning–Ferris*, in which the district court adopted the magistrate judge's report and recommendation (with modifications not pertinent to this discussion) to grant summary judgment in favor of the defendants on plaintiffs' § 107(a)(4)(B) claim. In *Browning–Ferris*, plaintiffs, who were previously defendants in a CERCLA suit filed by the United States, sued several defendants under § 107(a)(4)(B) seeking to impose joint and several liability on the defendants. The plaintiffs also asserted a claim for contribution under § 113(f), but conceded to the magistrate judge that their claim for contribution was time-barred as a result of § 113(g)'s three-year statute of limitations. As in the case presently before this court, the only issue before the court in *Browning–Ferris* was whether the plaintiffs' sole remedy against the defendants was a contribution claim pursuant to § 113(f), despite the plaintiffs' characterization of some of their claims

---

**11.** It is clear that SCA's express contribution claim, as set out in Paragraph 112 of SCA's complaint is time barred and, in fact, SCA has not argued to the contrary. Consequently, this court will grant the third-party defendants' motion to dismiss with respect to this claim.

as § 107 cost recovery actions, and was therefore time-barred.

In *Browning–Ferris,* the plaintiffs argued that they should not be limited to a claim for contribution, as they would lose the right to hold the defendants jointly and severally liable, such liability being available only under § 107. The court disagreed with the plaintiffs and held that:

> The language of Section 113 clearly indicates that a party who has already settled the issue of its own liability with the Government, as is the case here, is thereafter limited in its own future recovery from other potentially responsible parties relative to rights available prior to the settlement under Section 107. Such an interpretation does not necessarily obliterate the private cost recovery action set forth in Section 107(a)(4)(B), which may yet be, perhaps appropriately, available to persons who voluntarily embark on a response plan without waiting for the Government to spur them into action. *Compare, Avnet v. Allied–Signal* [825 F.Supp. 1132], No. 91–0383B, 1992 U.S.Dist. LEXIS 17009 (D.R.I.1992) (suggesting, without deciding, that plaintiffs who incur response costs without waiting for government action may retain a right to recovery under Section 107(a)(4)(B)) and *United States v. Hardage,* 1989 Haz.Waste Litig.Rep. (Andrews) 18307, 18314 (Dec. 4, 1989) (noting that cost recovery actions provide incentives for "private parties to begin clean-up activities on their own") and *United States v. Kramer,* 757 F.Supp. 397, 416–17 (D.N.J.1991) (section 107 actions are "an incentive for private parties to clean up hazardous waste sites, to risk their own capital initially, knowing that by then prevailing in a section 107 action, they will be reimbursed perhaps in excess of what might be shown in a section 113 action to have been their equitable share") with *Amoco Oil v. Borden,* 889 F.2d 664 (5th Cir.1989) (action found to be one for contribution, despite no formal determination of plaintiff's liability). These Plaintiffs, however, did not incur costs of their own initiative. Rather, they waited until they were involved as defendants in litigation with both the United States and the State of Maine. In fact,

some of the costs they wish to recover are payments made to cover costs incurred by the United States and the State. In our view, they are therefore confined to "seeking contribution from any person who is not party to" their consent decree with the United States and the State of Maine. 42 U.S.C. § 9613(f)(3)(B).

*Id.* at \*8–9 (footnote omitted).

The third-party defendants in the present case strongly urge this court to follow the reasoning and holding in *Browning–Ferris.* Additionally, the third-party defendants suggest that the case law relied upon by SCA has, in some instances, been clarified by later decisions which favor the third-party defendants' position. Specifically, the third-party defendants have referred the court to the decision in *Ciba–Geigy Corp. v. Sandoz Ltd.,* Civil Action No. 92–4491 (MLP), 1993 WL 668325 (filed June 17, 1993 D.N.J.).

In *Ciba–Geigy,* the district court first noted the split in authority on the issue of whether a private party who had been found responsible for cleanup costs could maintain an action under § 107 against other potentially responsible parties. The court then proceeded to analyze the CERCLA statute and the authorities presented to it, including two cases relied upon by the parties in the case at bar, *Kramer* and *Transtech:*

> Plaintiff relies on dicta in *Kramer* which suggests that this independent procedural track would also apply to actions filed by non-governmental PRPs.... The Court notes, however, that there is also language in that decision indicating that the *Kramer* court's reasoning is based on policy considerations unique to actions brought by the government.... In any event, the holding from *Kramer,* a case involving the United States government as the plaintiff, is not persuasive in a case, such as this one, which involves a private party plaintiff.

> \*    \*    \*    \*    \*    \*

The Court finds more persuasive, under the facts of this case, the reasoning in *Transtech Indus., Inc. v. A & Z Septic Clean,* 798 F.Supp. 1079 (D.N.J.1992).

\*    \*    \*    \*    \*    \*

In summarizing its legal holding, the *Transtech* court provided the following reconciliation of §§ 107(a) and 113(f):

> [P]laintiff's 107(a) action against defendants is authorized by section 113(f)(1)'s contribution provisions, for precisely the reasons that plaintiffs articulate the need for this action. In fact when properly construed, the two sections work together, one governing liability and the other governing contribution from those found liable. First, the plaintiff must show that the defendant has incurred section 107(a) liability. Then, it can sue for contribution under section 113(f)(1). (Footnote omitted).

> \* \* \* \* \* \*

It is clear that Congress reacted to the uncertainly [sic] regarding a PRP's right to seek contribution by enacting § 113(f) for if a PRP could have already recovered its full response costs under § 107(a), there would have been no need to authorize a PRP to recover a portion of its expenses in contribution. Section 113(f)'s legislative history thus indicates that Congress was enacting a provision to benefit non-governmental PRP's, one not needed by the United States. (Footnote omitted)....

This Court also concurs with the reasoning of the *Transtech* court, classifying a claim brought by one PRP against another as one for contribution. In describing the nature of such a claim, the *Transtech* court stated that

> "[u]nder general legal principles, a claim for contribution is one in which one liable party attempts to recover from another potentially liable party for its share of the cost.... Absent a statutory provision to the contrary, a claim against one liable party by a party who voluntary [sic] agreed to perform certain actions pursuant to a settlement agreement is still a claim for contribution.

*Transtech*, 798 F.Supp. at 1086. Because plaintiff's claim, by its very nature, sounds in contribution, it should be governed by the provisions of the statute drafted expressly for that purpose.

*Id.* at 10–11, 13, 14, 15–16. The third-party defendants in the present case urge this court, like the *Ciba–Geigy* court, to reject *Kramer* and follow *Transtech*.

At this point it is important to note the different factual patterns that arise in cases in which a plaintiff or a third-party plaintiff attempts to recover § 107 response costs. The first factual pattern, which this court will refer to as "contribution protection" cases, is illustrated by the *Transtech* case. In *Transtech*, the plaintiffs had performed a cleanup in accordance with a § 106 (42 U.S.C. § 9606) unilateral administrative order ("UAO") [12]. Plaintiffs then brought an action against 440 users of the site, seeking to recoup their share of the cleanup expenses. However, over 200 of the 440 defendants had previously settled a claim for clean-up costs brought by the federal government. Citing § 113(f)(2) [13], which provides contribution protection for settling parties, the defendants who had previously settled with the government filed a motion to dismiss the plaintiffs' complaint. As noted above in this court's discussion of *Ciba–Geigy*, the *Transtech*

---

12. 42 U.S.C. § 9606 states in pertinent part:

In addition to any other action taken by a State or local government when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require. The President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment.

13. CERCLA § 113(f)(2) provides that:

A person who has resolved its liability to the United States or a State, in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

court rejected the plaintiffs' argument that § 113(f)(2) did not bar their claim for § 107 response costs, and the court thus ruled that plaintiffs' purported § 107 claim was actually a claim for contribution under § 113. 798 F.Supp. at 1086 [14].

A similar fact pattern was present in *United States v. ASARCO, Inc.,* 814 F.Supp. 951 (D.Colo.1993). In *ASARCO,* the federal government sued several parties seeking to recover its costs for cleaning up a Superfund site. The government proposed a settlement with some of the parties that provided for dismissal of the non-settlors' cross-claims against them. The non-settlors objected, arguing that their claims under § 107 to recover a share of their independent response costs should not be barred. The *ASARCO* court, focusing on the undesirability of denying contribution protection to parties who settled with the government, held that:

> [W]here parties are jointly and severally liable under CERCLA, response costs can only be shifted by one party to another party by way of contribution. Where a liable party has incurred response costs for which it is jointly liable, and then attempts to exercise its statutory right to recover another party's share of that common liability, the claim is one for contribution. *See County Line [Inv. Co. v. Tinney],* 933 F.2d [1508] at 1515–16 [ (10th Cir.1991) ]; *Transtech Industries,* at 1086; *Dravo Corp.,* 804 F.Supp. at 1187. Absent a provision to the contrary in CERCLA, the fact that ASARCO and Res–ASARCO have incurred response costs does not alter the substance of their claims so as to enable them to void the contribution protection provided to Hecla by CERCLA § 113(f)(2). (Footnote 4) [15].

814 F.Supp. at 956.

The *ASARCO* court also stated that its interpretation of CERCLA was consistent with Congress' intent that Superfund sites be cleaned up expeditiously and fairly. The court then went on to state that:

> The possibility of disproportionate liability created by CERCLA "promotes early settlements, and deters litigation for litigation's sake, and is an integral part of the statutory plan." [*U.S. v.*] *Cannons [Engineering Corp.*], 899 F.2d [79] at 92 [1st Cir.1990]....
>
> The interpretation suggested by ASARCO and Res–ASARCO would severely undermine the effectiveness of § 113(f)(2). As a result, there would be far less incentive for Hecla and other defendants to expediently settle the claims against them....
>
> Unless a party in Hecla's situation can receive reasonable assurance that its settlement payment will buy a peace with finality, it may see little advantage in early settlement. Absent the contribution claim protection provided by Congress, one recalcitrant party might be able to hinder and delay indefinitely the settlement efforts of other parties. While the contribution protection rule may sometimes result in disproportionate liability, the possibility of such results is speculative, whereas the manifold advantages of early, final, individual settlements are highly probable.

814 F.Supp. at 956–57.

In two 1992 district court cases, plaintiffs were precluded from pursuing § 107 claims against *de minimis* settlers. In *Dravo Corp. v. Zuber,* 804 F.Supp. 1182 (D.Neb.1992), plaintiff, which was performing remedial activities at a site pursuant to an order by the USEPA, sought to recover a portion of its response costs from *de minimis* settlors. The court rejected plaintiff's argument that its suit involved, in addition to a contribution claim, a claim for response costs. The court held that:

> Both a "response cost claim" and a "contribution claim" seek to force a party settling

---

14. However, the *Transtech* plaintiffs were permitted to pursue their § 113 contribution claim against the defendants. The court reasoned that the contribution protection provided for in § 113(f)(2) did not bar the claim because the liability for which contribution was sought did not relate to a "matter addressed in the settlement." 798 F.Supp. at 1090.

15. At footnote 4, the court commented that "if two parties are not jointly and severally liable because the harm is divisible, one party could assert an independent cost recovery claim against the other because there is no common liability and therefore no right of contribution. *See County Line,* 933 F.2d at 1515 n. 11, 1516."

with the EPA to share in the cost of remediating a contaminated site to a degree different than required by the EPA on the theory that the settling party has received some benefit from the actions of a non-settling party who is also liable to the government. As noted previously, the words of the contribution bar of CERCLA were intended to foreclose such claims no matter what they are called.

804 F.Supp. at 1189.

In *Avnet, Inc. v. Allied–Signal, Inc.*, 825 F.Supp. 1132 (D.R.I.1992), plaintiffs brought a § 107(a) action against *de minimis* contributors to a waste site who had settled with the government by agreeing to pay a portion of past and estimated future response costs. The plaintiffs, non-settlors, had been ordered following the settlement to clean up the site pursuant to an administrative order by consent. The court noted that CERCLA seeks to encourage the USEPA to enter into settlements in order to hasten cleanup and reduce litigation. Further, CERCLA's *de minimis* settlement provision specifically serves to encourage early settlements in appropriate circumstances. The court then noted that CERCLA provides protection to settling parties via two specific sections: § 113(f)(2) (contribution protection for settling parties) and § 122(g)(5) (specifically addressing *de minimis* settlors). The court then stated that:

A suit by one PRP against another to obtain reimbursement is a claim for contribution and is barred by the contribution protection provisions of CERCLA if the defendant PRP has resolved its liability in a settlement with EPA.

These CERCLA provisions are meant to encourage settlements and to provide settling parties with "a measure of finality in return for their willingness to settle." Contribution protection is a vital part of *de minimis* settlement because the legal fees and other costs of negotiating and litigating with the United States, compounded by the potential costs of defending against actions for contribution by other PRPs, could often surpass the amount such minimal contributors would be responsible for paying. As a result, CERCLA provides *de*

*minimis* PRPs with the capacity to pay an amount proportionate to their responsibility at a site and allows them to be discharged from further negotiations and litigation with a minimum of expenditure of energy, time, and resources. Congress intended that this result favor settling parties over nonsettling parties.

A claim for contribution is a claim in which one liable party seeks to recover from another liable party for the latter party's share of a common liability. Under CERCLA, when one PRP sues another to recover a share of the response costs incurred by the first, that suit is a claim for contribution.

Contribution claims against the *de minimis* settlors are strictly prohibited by the plain language of the contribution protection provisions of CERCLA as discussed above.

\*    \*    \*    \*    \*    \*

Plaintiffs claim that there are fundamental differences between response costs recovery and contribution actions within CERCLA and, thus, base their claim solely on Section 107. As discussed above, however, plaintiffs' claim must be based on both Sections 107 and 113(f).

The plaintiff PRPs have sued other PRPs (including the *de minimis* settlors) seeking to recover a portion of the response costs that the plaintiffs claim they will bear in cleaning up the Site. Plaintiffs will incur response costs only as a result of work that they are compelled to do under the EPA's UAO.

While it may be true that the plaintiffs' claim is an action for response costs, it is a claim for *contribution* from the defendants for response costs. It is clear from the analysis of CERCLA and the history behind it that the plaintiffs' claim, whatever it's called, is one for contribution.... As well, the non-settling PRPs in this case cannot reach the *de minimis* PRPs for any type of contribution, including contribution for response costs.

825 F.Supp. at 1138–39.

In yet another case, *City and County of Denver v. Adolph Coors Co.*, 829 F.Supp. 340

(D.Colo.1993), the court applied a contribution bar in a settlement between private parties, precluding nonsettlors' from bringing contribution or response cost actions against the settling parties. With respect to the attempted contribution claim, the court stated:

> Were we to allow contribution claims against settling PRPs, the purposes of CERCLA would not only fail to be served, but would be thwarted. We do not find section 113(f)(2) inconsistent with contribution bars for city and private party plaintiffs; on the contrary, although section 113(f)(2) does not itself provide authority for private-party contribution bars, such bars are clearly in keeping with the spirit of both facilitating settlement as well as CERCLA.
>
> CERCLA has two primary purposes: (1) to achieve the prompt cleanup of hazardous waste sites and (2) to impose the cost of the cleanup on those responsible for the contamination.

829 F.Supp. at 344. With respect to the attempted response costs claim, the court held:

> Defendants contend that even if the Court imposes a bar on contribution actions brought by nonsettling parties (a contribution bar does not affect nonparties) against settlors, the bar should not include a bar on *response* costs. It is clear from the language of CERCLA itself that response cost actions are actions for contribution and are thus prohibited by contribution bars. *See* 42 U.S.C.A. §§ 9607(a)(4), 9613(f); *see also Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 672 (5th cir. 1989) (citing section 9613(f) and holding that when "one liable party sues another to recover its equitable share of the response costs, the action is one for contribution").
>
> Holding response costs subject to a contribution bar is also consistent with CERCLA's encouragement of settlements, outlined above.

*Id.* at 346.

The above discussion of the case law in which § 107(a) cost recovery claims were denied clearly shows that in each case the cost recovery claims were being pursued by a *nonsettlor* against settling parties (excepting, for the present, *Browning–Ferris*). Thus, the primary concern of the courts in these cases was to *protect the settling party* from contribution claims as is provided for in § 113(f)(2) and § 122(g)(5). Obviously, the broad policy concern being fostered in all of the above cases was the encouragement of settlements and resultant promotion of one of CERCLA's primary purposes: achieving the prompt cleanup of hazardous waste sites.

Nonetheless, even settling parties have not always been spared from claims under § 107(a). In *United States v. Hardage,* 19 Haz.W.Lit.Rep. 18307 (W.D.Okla. Sept. 22, 1989), a group of potentially responsible parties were permitted to sue settling parties under § 107 to recover the costs of response actions that they had taken on their own initiative and independently of government action. The court, in an oral opinion, stated:

> The Hardage Steering Committee asserts that courts recognize a response cost claim asserted under Section 107(a)(4)(B) of CERCLA is a distinct claim from a contribution claim for response costs asserted under Section 113(f). See, for example, the *Allied Corporation v. Acme Solvents* case at 691 F.Supp. 1100, Northern District of Illinois, 1988, and *United States v. New Castle County,* 642 F.Supp. 1258, 1261 through 1269, Delaware, 1986 decision.
>
> The United States responds that because the Hardage Steering Committee defendants have themselves stipulated to liability for response costs, any claims for response costs by the Hardage Steering Committee defendants is in effect a claim for contribution. The United States further argues that here the De Minimis settlors are paying more than their "fair share" of site response costs, which can only benefit non-settling parties such as the Hardage Steering Committee defendants. As a result of this overpayment, the United States asserts that any legitimate response costs incurred by Hardage Steering Committee would be dwarfed by this overpayment. This overpayment di-

minishes the financial exposure of the non-settling Hardage Steering Committee.

\* \* \* \* \* \*

[I]t is clear to the Court that there is [ ] a marked distinction between a contribution claim and a response cost claim under CERCLA. The response cost claims which the Hardage Steering Committee defendants are asserting arise under Section 107(a)(4)(B) of CERCLA. The response cost claim is an original claim to recovery [sic] money that private party defendants have spent for their own response measures, such as fence construction and alternative water supplies. A contribution claim arises under Section 113(f) of CERCLA. A contribution claim is a derivative claim in which a defendant attempts to transfer to a third-party some of the liability asserted against it by the plaintiff.

A number of courts have held that private parties, such as the Hardage Steering Committee defendants, may invoke the authority of Section 107(a)(4)(B) of CERCLA to prosecute independent claims to recover costs incurred to cleanup a waste site. See the *Cadillac Fairview/California v. Dow Chemical* case at 840 F.2d [691] at 694 [(9th Cir.1988)].

The Court finds that the United States has no statutory authority to protect the De Minimis defendants from Hardage's independent response claims. The Court further finds that CERCLA specifically provides for an action by "any other person" for "other necessary costs of response." Section 107(a)(4)(B) of CERCLA.

Accordingly, the Court will interpret the Consent Decree to clarify that the settlement does not discharge the independent response cost claims asserted by Hardage Steering Committee defendants in its cross-claims. Were the Court to rule otherwise, it would provide a disincentive, in the Court's view, to private parties to begin clean-up activities on their own. The Court finds it is in the public interest to encourage these types of response activities.

*Id.* at 18313–14.

Similarly, in *Key Tronic Corp. v. United States,* No. C–89–694–JLQ (E.D.Wash. Aug. 9, 1990), the court permitted Key Tronic to pursue a claim under § 107(a)(4)(B) to recover its independent response costs against a *de minimis* settlor, the United States Air Force ("USAF"). The following discussion from the *Key Tronic* decision is instructive:

The USAF argues that Key Tronic's claim for contribution under 42 U.S.C. § 9613(f) is expressly prohibited by section 9622(g). Additionally, the USAF argues that Key Tronic's claim for response costs under section 9607 is similarly barred by implication, because the claim is in reality nothing more than an attempt to obtain contribution under a different guise.

In response to the USAF's motion to dismiss, Key Tronic concedes that section 9622(g) prohibits its claim to recover any portion of the $4.2 million Consent Decree obligation, under 42 U.S.C. § 9613(f) (contribution), or 42 U.S.C. § 9607(a)(4)(B) (private response cost recovery). Therefore, Key Tronic's claims against the USAF should be dismissed with prejudice with respect to the $4.2 million Key Tronic must pay pursuant to the Consent Decree.

With respect to its First Claim for Relief, however, Key Tronic argues that section 9622(g) does *not* bar its direct cause of action against the USAF under 42 U.S.C. § 9607(a)(4)(B), to recover a portion of the $1.2 million Key Tronic spent in its initial private response to the Colbert release. Thus, the issue presented by the USAF's motion is whether the contribution protection provided a settling PRP by 42 U.S.C. § 9622(g)(5) bars a *direct* action by another PRP under 42 U.S.C. § 9607(a)(4)(B) to recover initial response costs privately incurred.

\* \* \* \* \* \*

The provision in CERCLA that contribution actions cannot be maintained against settlor PRPs "was designed to encourage settlements and provide PRPs a measure of finality in return for their willingness to settle." *United States v. Cannons Eng'g Corp., supra,* 899 F.2d at 92 *citing* H.R.Rep. No. 990253, Part I, 90th Cong., 1st sess. 80 (1985), *reprinted in*

1986 U.S.Code Cong. & Admin.News 2835, 2862. With respect to a contribution claim by one PRP against another PRP for liability *to the EPA*, the effect of contribution protection is not inconsistent with the overall purposes behind CERCLA. Those purposes are (1) to facilitate of prompt cleanup of hazardous releases, and (2) to place the ultimate burden of a cleanup on those responsible for creating the hazard. *See Private Response Recovery Actions Under CERCLA,* 34 Kan.L.Rev. 109, 119 (1985). As to liability to the EPA, contribution protection is consistent with CERCLA's objectives because all PRPs have the same incentive to promptly settle the EPA's claims against them, and the procedures for EPA settlement tend to insure a proper allocation of responsibility upon the parties. *See generally,* 42 U.S.C. § 9622.

When applied to an action under section 9607(a)(4)(B) to recover private response costs, however, the effects of contribution protection are not necessarily consistent with CERCLA's primary objectives.

First, if contribution protection is applied to preclude recovery of privately incurred response costs, PRPs will be *discouraged* from taking initiatives to clean up hazardous releases. Instead, PRPs would be encouraged to respond only via EPA settlements, since costs incurred in private response actions may not be even partially recovered against other PRPs who do nothing on their own, yet settle with the EPA and obtain contribution protection.

Second, the application of contribution protection to private response cost actions would work against proper allocation of the clean-up burden. Because liability under CERCLA is joint and several, *see United States v. Ottati & Goss, Inc.,* 630 F.Supp. 1361, 1395 (D.N.H.1985), the EPA might have little incentive to investigate further once it locates one solvent PRP. Application of contribution protection to actions for recovery of private investigation costs will eliminate the incentive 42 U.S.C. § 9607(a)(4)(B) provides to identify and locate other PRPs.

*Id.* at 6–7, 9–11.

All of the cases discussed above, with the exception of *Browning–Ferris,* involved suits against settling parties. Each of these cases required the courts to balance the goal of protecting settling parties from contribution claims with the goal of encouraging parties to quickly begin cleanup operations by ensuring them that they will be permitted to bring suits against responsible parties once it is discovered who those responsible parties are.

Other cases illustrate a different factual pattern: a settling party (or a party that otherwise incurred response costs) seeks to assert a § 107(a) cost recovery claim against *non-settling parties.* In the majority of these cases, the courts have permitted the § 107(a) action to proceed.

For example, in *Sand Springs Home v. Interplastic Corp.,* 670 F.Supp. 913 (N.D.Okla.1987), plaintiff, the owner of a contaminated site, incurred response costs as a result of an administrative order issued by the USEPA. Plaintiff sought recovery of some of its response costs from the generators of the waste that caused the contamination of the site. The court, relying in large part on *City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135 (E.D.Pa 1982), permitted the plaintiff to pursue its cost recovery claim. The court stated:

> Plaintiff Sand Springs Home is the owner of the hazardous waste disposal site. Defendant Reid is alleged to be one of the generators of those hazardous wastes. Had the federal or state government undertaken to clean up the Sand Springs Home site, these parties arguably would have been liable for their share of costs under CERCLA. However, as in *City of Philadelphia,* this did not occur. Instead, Plaintiff herein undertook the cleanup and now contends that Defendant Reid is liable for its share of those costs. In *City of Philadelphia,* the court found that the language of CERCLA, its legislative history, and its environmental objectives did not preclude the plaintiff's claim for recovery of a portion of the clean-up costs. The Court finds the same reasoning applies herein. The Court finds that under 42 U.S.C. § 9607(a)(4)(B), a private party, even though a responsible party under

CERCLA, who voluntarily pays CERCLA response costs may bring an action in its own behalf to collect cleanup costs against the parties allegedly responsible for the production and dumping of hazardous wastes.

670 F.Supp. at 916.

Similarly, in *Allied Corp. v. Acme Solvents Reclaiming, Inc.*, 691 F.Supp. 1100 (N.D.Ill. 1988), after investigations by and negotiations with the USEPA, the plaintiffs entered into a consent order in which they agreed to clean up a contaminated waste site. Over time and after incurring millions of dollars in costs, the plaintiffs substantially completed the clean up of the site. The plaintiffs then brought a § 107(a) action against the users of the contaminated site, seeking to recover their response costs. The defendants objected to the § 107(a) claims, as liability under § 107 is joint and several. The defendants, seeking to avoid joint and several liability in favor of several liability only, insisted that plaintiffs' claims were essentially contribution claims. The court rejected the defendants' arguments, reasoning as follows:

The necessary premise of the defendants' argument is that contribution, and its attendant standard of several liability, is the only form of claim available for a responsible party suing another responsible party under Section 107. CERCLA now explicitly provides, however, that "[a]ny person *may* seek contribution" during or after a cost recovery action under Section 107(a). 42 U.S.C. § 9613(f)(1) (emphasis supplied). The statute is clearly permissive. In allowing but not mandating that claims under Section 107 be for contribution, the statute implies that Section 107 actions are not always in the nature of contribution. It is significant that Section 113(f)(1) does not specify that it applies only to certain types of claimants. Instead, by its terms it applies to "any person".

Policies underlying CERCLA support the notion that claims between PRP's are not always, and should not always be, in the nature of contribution. As noted earlier, CERCLA seeks the expeditious and safe clean up of hazardous waste sites. A blanket prohibition against joint and several liability in claims between responsible parties would discourage a willing PRP from cleaning up on its own. This is especially true where one or more of the parties are insolvent and, thus, incapable of sharing the costs of cleanup. In this situation, a PRP which is otherwise amenable to cleaning up may be discouraged from doing so if it knows that, where the harm is indivisible, its only recourse for reimbursement is contribution from the solvent PRP's. A prohibition against joint and several liability would leave the willing PRP holding the bag for the insolvent companies. On the other hand, a willing PRP would be encouraged to clean up where the law leaves open the possibility that the PRP could recover all costs as against nonwilling, solvent PRP's under a theory of joint and several liability.

691 F.Supp. at 1118.

In *General Electric Co. v. Litton Industrial Automation Systems, Inc.*, 920 F.2d 1415 (8th Cir.1990), one of the few relevant circuit court opinions, General Electric brought an action pursuant to § 107(a)(4)(B) against Litton to recover certain cleanup costs incurred by General Electric. Litton objected to General Electric's § 107(a)(4)(B) action, arguing that General Electric should not be allowed to recover its cleanup costs because the cleanup was induced by the threat of a lawsuit. The Eighth Circuit Court of Appeals held that Litton was essentially asserting an "unclean hands" defense and such a defense is not available against a § 107 action. The Eighth Circuit stated:

CERCLA does not provide for an "unclean hands" defense; the liability imposed by 42 U.S.C. § 9607(a) is subject only to the defenses noted above. Thus, the motives of the private party attempting to recoup response costs under 42 U.S.C. § 9607(a)(4)(B) are irrelevant. The purpose of allowing a private party to recover its response costs is to encourage timely cleanup of hazardous waste sites. This purpose would be frustrated if a plaintiff's motives were subject to question. We will not look at the impetus behind a plaintiff's decision to begin the cleanup process; we

will look only to see if there has been a release or threatened release for which the defendant is responsible. 42 U.S.C. § 9607(a).

920 F.2d at 1418.

Although *Burlington Northern Railroad Co. v. Time Oil Co.,* 738 F.Supp. 1339 (W.D.Wash.1990), is a "contribution protection" case, it is discussed here because the court's analysis of the distinction between a § 107 action and a § 113 action is instructive. In this case, Burlington filed a suit against Time Oil seeking recovery of its costs spent for remediation of a hazardous waste site. Time Oil moved for summary judgment of dismissal for all claims against it by Burlington, arguing that Burlington's claims were barred by CERCLA's contribution protection, § 113(f)(2). In 1986, Time Oil had been sued by the USEPA and, in 1988, Time Oil entered into a consent decree with the USEPA, the State of Washington, and the City of Tacoma. Pursuant to this consent decree, Time Oil agreed to reimburse the USEPA and the state for monies spent to remedy damage to the City's aquifer located within the Time Oil site. The consent decree fully resolved Time Oil's liability to the United States and the State of Washington with respect to that property.

The principal question presented to the *Burlington* court was whether § 113(f)(2), which was enacted in 1986 as part of the Superfund Amendments and Reauthorization Act ("SARA"), should apply retroactively to bar response costs that were incurred in 1985, well before the enactment of SARA. The *Burlington* court held that there was no evidence that SARA was to be applied retroactively and then went on to discuss the statutory distinctions between a cost recovery action and a contribution action:

> The language of CERCLA includes other distinctions between contribution actions and cost recovery actions that lend weight to the interpretation that Congress intended to maintain the separate avenues of recovery. Section 9613(g), which governs statutes of limitation, treats the two actions differently. Section 9613(g)(2) provides that "actions for recovery of costs" under section 9607 must be commenced within three years after completion of a removal action or six years after initiation of physical on-site construction of a remedial action. Section 9613(g)(3), on the other hand, requires that actions for "contribution" be brought within three years after the date of judgment in a recovery action or the date of an administrative order or settlement.

> In Section 9613(h)(1) discussing judicial review, CERCLA provides that a court may review an action "to recover response costs *or* damages *or* for contribution" (emphasis added).

> Also, Section 9607(a) expressly limits the defenses available to such an action. Parties liable under CERCLA, are liable for another party's response costs "notwithstanding any other provision or rule of law and *subject only to the defenses set forth in subsection (b),*" (emphasis added). These defenses are (1) an act of God; (2) an act of war; or (3) an act or omission of an unrelated third party. Congress expressly did not include settlement agreements as a defense to direct cost recovery actions, nor did it amend any portion of this section when it enacted SARA.

738 F.Supp. at 1343.

The statutory distinction between § 107 and § 113 actions was also recognized in *Chesapeake & Potomac Tel. Co. v. Peck Iron and Metal,* 814 F.Supp. 1269 (E.D.Va.1992). In *Chesapeake,* the USEPA issued an administrative order under 42 U.S.C. § 9606 requiring the Chesapeake and Potomac Telephone Company ("C & P"), the major waste contributor to a contaminated site, to clean up the site. C & P then filed a private cost recovery action under § 107. The defendants to the cost recovery action moved for partial summary judgment, arguing that only an "innocent" plaintiff could pursue a cost recovery action under § 107. The *Chesapeake* court disagreed, stating that:

> Despite defendants' arguments to the contrary, the Court has little difficulty determining that C & P is entitled to bring its claim under Section 107(a), and that this action need not be recast as one solely for contribution, pursuant to Section 113(f) of CERCLA. The Court will, of course,

retain jurisdiction over this matter throughout its contribution phase, and will apportion liability in an equitable fashion at that time. There is nothing in the language of the statute, however, that precludes a party, like C & P, itself liable under CERCLA, to initiate cleanup and sue to recover its costs under Section 107.

Nothing in the statute supports the assertion that only the United States Government or an "innocent" plaintiff can bring a cost recovery action under Section 107(a). To the contrary, the statute specifically provides that covered persons shall be liable to both the United States Government, among others, and to "any other person" who incurs response costs.... In the absence of a "clearly expressed legislative intention to the contrary," the language of the statute itself "must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Nothing in the statute indicates that only "innocent" persons fall within the definition of "any other person". Therefore, the Court interprets the term "person" in Section 107 in accord with the definition of that term provided by the statute itself. CERCLA defines "person" as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 9601(21). C & P certainly qualifies.

814 F.Supp. at 1277.

In yet another case, *Kelley v. Thomas Solvent Co.*, 790 F.Supp. 710 (W.D.Mich. 1990), defendants Thomas Solvent and Thomas Development were found jointly and severally liable for the United States' and the State of Michigan's response costs. Defendant Grand Trunk Western Railroad entered into a consent decree with both government entities. Thomas Solvent and its owner, Richard Thomas, later sought reimbursement from Grand Trunk for the response costs they incurred in cleaning up a contaminated site, arguing that Grand Trunk dumped wastes at the site. Grand Trunk, in turn, sought to recover response costs it incurred pursuant to the consent decree. The court found that all three defendants had shown that they incurred response costs and then turned to the question of whether a responsible party can sue under § 107 to recover response costs from another responsible party:

One major issue remains, however. The movants, Grand Trunk, Thomas Solvent, and Richard Thomas, are all responsible parties themselves. Section 9607 applies to response costs incurred by "any other person." 42 U.S.C. § 9607(a)(1)(B) [sic]. This language seems to imply that only those other than owners/operators at the time of the hazardous contamination have standing to assert a claim for response costs under this section. The purpose behind this provision is to give persons a private cause of action against owners/operators for compensation. It encourages subsequent owners and occupiers to take prompt response actions when hazardous contamination is discovered and thus, minimizes harm. [Citations omitted].

A few courts have addressed whether potentially responsible or responsible parties should have a cause of action for reimbursement under section 9607(a)(1)(B) [sic]. They have found such a right of action. *Chemical Waste Mgt. v. Armstrong World Indus.'s*, 669 F.Supp. 1285, 1291 (E.D.Pa.1987); *Sand Springs Home v. Interplastic Corp.*, 670 F.Supp. 913 (N.D.Okla.1987). Finding that potentially responsible and responsible parties have standing to seek reimbursement for their response costs under section 9607(a) supports the underlying policy of encouraging prompt and complete response actions to this extremely dangerous contamination. I thus find that section 9607(a) gives responsible or potentially responsible parties a right of action against owners/operators for response costs.

790 F.Supp. at 717. This holding was later applied to a subsequent case in the same court, *Charter Township of Oshtemo v. American Cyanamid Co.*, 1993 WL 561814, 1993 U.S.Dist. LEXIS 13176 (W.D.Mich. Aug. 19, 1993).

Additionally, in another recent case, the District Court in Kansas held that potentially responsible parties may maintain an action for cost recovery under § 107(a). In *Barton Solvents v. Southwest Petro–Chem*, 1993 WL 382047 (D.Kan. Sept. 14, 1993), Barton Solvents entered into a consent agreement with the Kansas Department of Health and Environment concerning the cleanup of hazardous wastes at a contaminated site. Barton Solvents later filed an action under § 107 and § 113 against a defendant. The defendant moved for summary judgment arguing that Barton Solvents, as a potentially responsible party, could not seek to recover all of its cleanup costs from one defendant, and that the defendant could only be held liable for its equitable share of the cleanup costs by way of a contribution action. Relying heavily on *Allied Corp. v. Acme Solvents Reclaiming, Inc.*, 691 F.Supp. 1100 (N.D.Ill.1988), and distinguishing *Transtech Indus., Inc. v. A & Z Septic Clean*, 798 F.Supp. 1079 (D.N.J. 1992), the court denied the defendant's motion for summary judgment. The court stated:

> CERCLA section 107(a) clearly indicates that the government is not the only entity that can bring any action for cost recovery. Specifically, a private party may bring such an action, 42 U.S.C. § 9607(a)(4)(B) ("any other person").... Thus, this court concludes that it has been established by other courts that a potentially responsible party may bring a cost recovery action against other responsible parties under CERCLA section 107.

> \*      \*      \*      \*      \*      \*

> In summary, the court concludes that defendant's motion for summary judgment must be denied.. The weight of authority establishes that liability under CERCLA is joint and several. Such liability extends to actions for cost recovery brought by private parties under CERCLA section 107, even actions by private parties who are potentially responsible parties. Thus, an action for contribution is not the only type

of recovery available to a potentially responsible party under CERCLA.

> To hold otherwise would be to defeat CERCLA's goal of encouraging settlements with the government.... It seems appropriate that the burden of identifying and suing all potentially responsible parties should fall on a non-settling party such as Southwest Petro–Chem rather than settling plaintiff Barton Solvents.

*Id.* at \*3, \*5.

Having set forth the above discussion of the pertinent case law, a few points become obvious. First, the cases in which a non-settlor attempted to recover response costs from a settlor are not directly relevant to the case at bar because, under the facts of this case, this court has not been asked to decide whether a settling party is being wrongfully denied its statutorily guaranteed contribution protection [16]. Second, the cases in which a settlor has sought to recover its response costs from a non-settlor are directly applicable to the present case. And all of these cases have permitted the settlor's § 107 action to proceed, with the exception of the *Browning–Ferris* case.

This court disagrees with the conclusion reached in *Browning–Ferris* for several reasons. First, contrary to the *Browning–Ferris* court's statement, it is not clear from the language of § 113 that Congress intended for a party who has already settled the issue of its own liability with the government to be limited solely to a § 113 contribution action. If the language of § 113 clearly resolved this issue, there would not be such a profusion of diverse and conflicting opinions discussing the issue. Second, the *Browning–Ferris* court's distinction between plaintiffs who incur costs "of their own initiative", and on that basis possibly retain a right to pursue § 107 actions, and plaintiffs who are subject to a suit by the USEPA or other governmental body, and for that reason lose the right to pursue § 107 actions, is not supported by the CERCLA statute itself. Consequently, this

---

**16.** The court acknowledges that the government has filed a brief requesting that this court rule that SCA does not have a separate non-contribution action against the third-party defendants, claiming that allowing such a cause of action would undermine the contribution protection provision of § 113(f)(2) and discourage CERCLA defendants from settling with the government.

court declines the third-party defendants' invitation to follow *Browning–Ferris.*

This court has carefully studied the record of the present case, the pertinent portions of the CERCLA statute (including the SARA amendments), and a whole plethora of cases from all across the country. As a result of this study, the court has concluded that the correct result in this case is best achieved by permitting SCA to pursue its § 107 cost recovery claim. In reaching this decision, this court gave due consideration to the particular facts of this case which are discussed more fully below.

SCA, which claims to have begun investigating contamination at the site as early as 1985, was the only party to respond to the USEPA's notice letters by submitting a proposal for action on July 11, 1988. An ROD incorporating the USEPA's chosen remedy was adopted on August 26, 1988 and SCA signed the Consent Decree on October 3, 1988, approximately six weeks after the entry of the ROD. Thus, SCA has demonstrated its willingness to take appropriate action with respect to the site.

The third-party defendants portray SCA as an unwilling participant who had been threatened with a lawsuit by the federal government and then, admitting liability in the face of certain defeat, agreed at the last minute to enter into a consent decree. However, it is clear that the record simply does not support the third-party defendants' portrayal of SCA. Rather, the record shows that the government's complaint against SCA[17] was filed simultaneously with the Consent Decree (which SCA had signed four months earlier) and the complaint was a statutory formality as SCA was not required to answer the complaint or take any other action.

Moreover, it is important to note that SCA has never admitted liability. In fact, the Consent Decree, at page 13, expressly states that:

The Settling Defendant [SCA] denies liability under Federal or State statutory or common law and has agreed to enter into this Consent Decree to avoid the costs of litigation.

This Consent Decree is not and shall not constitute an admission or adjudication of any fact or conclusion of law or a waiver of any right or defense of the Settling Defendant with respect to any matter. This Consent Decree shall not constitute evidence of any wrongdoing, misconduct or liability on the part of the Settling Defendant, its officer, directors, agents, servants, employees, successors, predecessors, contractors, assigns, and any persons, firms, subsidiaries, divisions and corporations acting under or for them. Nothing in this Section shall prohibit the use of this Consent Decree by any party as evidence to establish its existence or its terms.

CERCLA § 122(d)(1) makes it clear that a party's non-admission of liability in a consent decree is permissible and, further, that such a consent decree may *not* be used in any way as a finding of liability under any section of CERCLA. Section 122(d)(1) specifically provides for settlements with *potentially* liable parties (note that this section of the statute does not refer to "liable parties" or parties "who have resolved their liability") and states that:

**(1) Cleanup agreements**

  **(A) Consent Decree**

Whenever the President enters into an agreement under this section with any *potentially responsible party* with respect to remedial action under section 9606 of this title, following approval of the agreement by the Attorney General, except as otherwise provided in the case of certain administrative settlements referred to in subsection (g) of this section, the agreement shall be entered in the appropriate United States district court as a consent decree. The President need not make any finding regarding an imminent and substantial endangerment to the public health or the

---

17. The government's complaint listed two causes of action against SCA. The government's first claim was pursuant to § 106 (42 U.S.C. § 9606) and requested the court to enter an injunction against SCA to perform remedial action at the site. The government's second claim was pursuant to § 107 (42 U.S.C. § 9607) and sought recovery of response costs incurred and to be incurred by the government.

environment in connection with any such agreement or consent decree. (Emphasis provided).

**(B) Effect**

The entry of any consent decree under this subsection shall not be construed to be an acknowledgment by the parties that the release or threatened release concerned constitutes an imminent and substantial endangerment to the public health or welfare or the environment. Except as otherwise provided in the Federal Rules of Evidence, the participation by any party in the process under this section shall not be considered an admission of liability for any purpose, and the fact of such participation shall not be admissible in any judicial or administrative proceeding, including a subsequent proceeding under this section.

**(C) Structure**

The President may fashion a consent decree so that the entering of such decree and compliance with such decree or with any determination or agreement made pursuant to this section shall not be considered an admission of liability for any purpose.

Thus, SCA's liability has never been established nor admitted, and it is clear that SCA is not a "liable" party as that term is generally used in the legal setting. This fact seriously undermines the reasoning of the *Transtech, ASARCO, Avnet* and *Ciba-Geigy* courts. All of these courts reasoned that a settling party's claim is necessarily a contribution claim, defining a contribution claim as a claim in which one *liable* party attempts to recover from another potentially liable party for its share of the cost. *Transtech,* 798 F.Supp. at 1086; *ASARCO,* 814 F.Supp. at 956; *Avnet,* 825 F.Supp. at 1138; *Ciba-Geigy,* No. 92–4491 at 16. However, as this court is precluded by the plain language of CERCLA and the Consent Decree from considering SCA's participation in the Consent Decree as a determination or admission of liability, this court finds it difficult, if not impossible, to view SCA's claim against the third-party defendants as a claim for contribution.

The court will next discuss SCA's other arguments concerning the proper interplay of the various sections of CERCLA. SCA has put forth a very persuasive argument explaining, at least in part, the rationale for having different limitations periods for contribution and cost recovery in CERCLA actions. SCA points out that in contribution actions, the obligation to pay is known and is fixed at the time of judgment or settlement and thus a three year limitations period appears adequate, especially where a party is not encumbered with the responsibility of cleaning up a site. However, in a cost recovery action an accurate picture of the costs involved in a cleanup will not emerge until the cleanup is underway, which can often be many years after entry of a consent decree which outlines the remedial action to be taken, and thus cost recovery actions have a longer six-year limitations period.

This time lag between the decision to cleanup a site and the incurrence of costs throughout the actual cleanup operation is caused, at least in part, because the USEPA must approve the various work plans involved in a remedial action. SCA states that in the present case, for example, SCA was required to await USEPA approval and thus did not begin to undertake remedial action until 1990, and did not begin removing drums from the site until February of 1991. Additionally, SCA claims that it was not until the drum removal was underway that it was able to obtain physical evidence of the wastes of certain third-party defendants at the site, when drums with the third-party defendants' names on the labels were actually found at the site and SCA had the opportunity to test the contents of the drums. SCA argues that in cases such as the present one, where drum removal began more than three years after the entry of the Consent Decree, application of the three-year statute of limitations would bar recovery simply because the plaintiff had not yet had the opportunity to begin digging. SCA concludes that Congress could not have intended this result.

SCA also points out that if its cleanup operation were viewed as a *removal,* rather than a remediation, the limitations period would not yet have started to run, as CERCLA provides that actions for cost recovery for removal must be brought within three

years of *completion* of the removal. See § 113(g)(2)(A), set forth at footnote 6, *supra*. SCA argues that Congress recognized the ongoing nature of a remedial action and provided that when a party has undertaken such an action it receives the benefit of a longer limitations period in which to initiate its cost recovery action, *i.e.*, six years from initiation of physical on-site construction of the remedial action.

SCA further argues that the terms of the Consent Decree preserved its right to seek both cost recovery claims and contribution claims. The Consent Decree, at page 41, provides that:

It is understood that the Settling Defendant may pursue *cost recovery and contribution claims* against certain non-parties, and that non-parties may become parties to this Decree only upon the mutual agreement of all other parties. (Emphasis provided).

According to SCA, the Consent Decree's provision that SCA could pursue cost recovery claims is supported by the fundamental policy underlying CERCLA: encouraging negotiated private party cleanup of hazardous waste sites. As the House Committee on Energy and Commerce stated: "Negotiated private party actions are essential to an effective program for cleanup of the nation's hazardous waste sites and it is the intent of this Committee to encourage private party cleanup at all sites." H.Rep. No. 99–253(I), U.S.Code Cong. & Admin.News, 99th Cong. 2d Sess. (1986) Vol. 4 at 2835, 2883.

The third-party defendants and the government, however, argue that a ruling by this court that SCA has an independent cost recovery action will harm the overall public interest by impairing the government's ability to grant effective contribution protection to settling parties pursuant to § 113(f)(2). The government argues that potentially liable parties will be hesitant to settle with the government if they can be held liable under § 107 for response costs incurred by third parties. As liability under § 107 is generally joint and several, a settling party who is also subject to a § 107 suit may be required to pay more than its fair share of the cleanup costs.

The court is not persuaded by the government's concerns. Clearly, if a settling party is found *liable* under § 107, it may then take advantage of § 113(f)'s contribution provisions and sue other liable or potentially liable parties, and in this way protect itself from unlimited liability. Additionally, liability under § 107 is not joint and several if the harm is divisible and there is a reasonable basis for apportionment of damages. *Charter Township of Oshtemo, supra,* 1993 WL 561814, *2, at *5–6. Thus, upon the proper showing, each defendant in a § 107 action will be held liable only for the portion of harm it caused. Clearly, this approach to the problem furthers both of CERCLA's primary goals: prompt cleanup of hazardous wastes *and* imposing the costs of cleaning up on those parties responsible for dumping the waste.

### Conclusion

For all the foregoing reasons, the third-party defendants' motion to dismiss SCA's first amended third-party complaint is hereby DENIED with respect to SCA's cost recovery claim and SCA's declaratory judgment claim.

The third-party defendants' motion to dismiss is hereby GRANTED with respect to SCA's contribution claim.